CRANSTON TEACHERS ALLIANCE LOCAL NO. 1704 AFT et al.

v.

Joseph MIELE et al.

83–390–Appeal.

Supreme Court of Rhode Island.

July 3, 1985.

234

Richard A. Skolnik (Lipsey & Skolnik, Ltd.), Providence, for plaintiff.

Richard A. Brousseau, George F. McDonald (McDonald Ferdinandi & Mastrati), Jeremiah Jeremiah, Jr., Cranston, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal by the plaintiffs, the Cranston Teachers Alliance and others, from the denial of their motion to enjoin the defendant, Joseph Miele, from acting, performing, or otherwise undertaking any of the duties of a school-committee member while employed by the city of Cranston.[1] The parties submitted this case on an agreed stipulation of fact, which is summarized as follows.

The defendant, prior to his death, was employed by the city of Cranston as a rehabilitation specialist in the City of Cranston Redevelopment Office. The defendant has also served as a member of the Cranston School Committee, Ward 3, since 1978, and recently won his reelection on November 2, 1982, being sworn in on January 3, 1983. The Cranston Teachers Alliance, Local No. 1704, American Federation of Teachers, is the collective-bargaining representative of teachers within the school system of Cranston, Rhode Island. The other plaintiffs are teachers in the Cranston school system, residents of Ward 3 or taxpayers of the city of Cranston. These plaintiffs allege that according to G.L. 1956 (1981 Reenactment) § 17–1–5.1 and § 2.07 of the Cranston City Charter, defendant was precluded from holding both his

---

1. The defendant, Joseph Miele, died before this case was argued before this court. Even though plaintiffs' claim is moot, we shall consider this question, which is capable of repetition but could evade review, because of the extreme public interest involved. *See State v. DePasquale,* — R.I. —, —, 413 A.2d 101, 103 (1980).

The case was remanded to the Superior Court on May 6, 1985, for the entry of a Super.R.Civ.P. 54(b) judgment *nunc pro tunc.* The judgment was entered on May 13, 1985, and the papers were then returned to this court.

elective office as school-committee member and his job as rehabilitation specialist for the city. Section 17–1–5.1 reads in pertinent part as follows:

"**Municipal and state employees holding elective public office.**—A municipal employee may hold a state elective office or a municipal elective office provided that no municipal employee may hold a municipal elective office in the city or town in which he or she is employed, and a state employee may hold any municipal elective office. Any provision in any state law, municipal ordinance or city or town charter prohibiting a municipal employee from holding state elective office or municipal elective office other than in the town where he or she is employed and a state employee from holding a municipal elective office is hereby declared null and void."

Section 2.07 of the Cranston City Charter provides:

"No elective officer shall during his term of office hold any other office or profit under the city, state or federal government except that of notary public, member of the military or naval reserve of the United States, or member of the teaching staff of an educational institution of the State of Rhode Island."

The trial justice, in reaching his decision that a preliminary injunction should be denied, declared that § 2.07 of the Cranston City Charter is null and void because it is unconstitutionally overbroad. Although he found that § 17–1–5.1 is constitutional, he ruled that this statute did not apply since defendant's First Amendment right to hold this elective nonpartisan office outweighed the right of the government to remove him from it.

On appeal, plaintiffs allege that the trial justice (I) erred in finding that defendant had standing to challenge the Cranston City Charter provision on the ground that it is overly broad, (II) erred in finding that defendant's First Amendment right outweighed the interests of the government, and (III) committed further error by failing to apply the provisions of § 17–1–5.1 to the facts of the case at bar.

I

The overbreadth doctrine arose from a judicial fear that invalid laws might too often deter protected speech if they are not quickly struck down. *Magill v. Lynch,* 560 F.2d 22, 29 (1st Cir.1977), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1236, 55 L.Ed.2d 763 (1978). Particularly suspect are laws that contain prohibitions that are too broad in their sweep, and that fail to distinguish between conduct that may be proscribed and conduct that must be permitted. In *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830, 841 (1973), the Supreme Court recognized that the application of the overbreadth doctrine is strong medicine that should be employed sparingly and only as a last resort; it should not be invoked when a limiting interpretation has been or could be placed on the challenged statute. Because of the drastic nature of the doctrine, the Court held that a litigant must demonstrate substantial overbreadth before he even has standing to invoke its protection. "[P]articularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.* at 615, 93 S.Ct. at 2918, 37 L.Ed.2d at 842.

We applied the *Broadrick* test to a provision in a city home-rule charter in *Cummings v. Godin,* 119 R.I. 325, 340, 377 A.2d 1071, 1078 (1977) and determined that the test seemed somewhat circular since it required a consideration of the merits of the overbreadth claim prior to the determination of the party's standing. The challenged provision prohibited city employees from holding any elective offices, including partisan and nonpartisan, state, federal, and local elective offices. The city contended that these prohibitions were necessary for promoting the integrity and efficiency of the government. Although we

agreed with this compelling interest advanced by the city, we nevertheless found the restrictions unconstitutionally overbroad since they foreclosed access to a significant number of offices and candidacies that posed no threat to the governmental interest.

The restrictions in *Cummings* are very similar to those in § 2.07 of the Cranston City Charter. Although § 2.07 does contain some exceptions to the dual-office holding prohibition, we still agree with the trial justice's finding that the prohibitions of § 2.07 are too broad since they sweep in both protected and unprotected conduct by prohibiting all elective officers from holding any other office or profit whether this office is partisan or nonpartisan, state, federal, or local. The city of Cranston's interest in efficient and effective government is not furthered by a provision containing such broad restrictions. Accordingly, we affirm the trial justice's finding that § 2.07 is substantially overbroad and consequently determine that defendant has standing.

In reaching this conclusion, we have essentially determined that this provision is overbroad. The city has not shown that the well-being of the municipal government requires all of the prohibitions of the present charter provisions. *See Cummings v. Godin*, 119 R.I. at 342, 377 A.2d at 1079. Not only do the restrictions of § 2.07 minimally promote the city of Cranston's interest in a disciplined government, but they also curtail the protected right to hold public office. *Cummings v. Godin*, 119 R.I. at 336, 377 A.2d at 1076; *see Clements v. Fashing*, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982). Accordingly, the trial justice's finding that § 2.07 is unconstitutional on the grounds of overbreadth is affirmed.

## II

The plaintiffs' only recourse in enjoining defendant from acting as school-committee member is pursuant to § 17–1–5.1. The plaintiffs contend that this statute is applicable since the government's interest in keeping defendant from this office outweighs the First Amendment right of defendant in holding this elective nonpartisan office.

Before balancing the interests of defendant and the government, we must first address the status of the office of school-committee member. The plaintiffs contend that although the office is labeled nonpartisan, nonpartisanship in office holding is honored more in its breach than in its observance. They claim that the candidates for school-committee office have been traditionally associated with one party or the other and that this particular defendant has in fact participated in activities of one in particular. Further, they note that the school-committee elections are the only nominally nonpartisan city contest.

We have consistently held that the findings of a trial justice sitting without a jury are entitled to great weight on appeal. Since we find that the evidence presented by plaintiff's does not establish that the trial justice's finding of nonpartisan status is clearly wrong or that he disregarded material evidence in reaching this decision, we shall not disturb his findings on appeal. *See North Smithfield Teachers Association v. North Smithfield School Committee*, — R.I. —, —, 461 A.2d 930, 934 (1983); *Harbor Marine Corp. v. Briehler*, — R.I. —, —, 459 A.2d 489, 492 (1983).

The United States Supreme Court has recognized that government has the right to place restrictions on the partisan conduct of its employees, insomuch as such limits substantially serve governmental interests important enough to outweigh the employees' First Amendment rights. *See Broadrick v. Oklahoma*, 413 U.S. at 606, 93 S.Ct. at 2913, 37 L.Ed.2d at 863; *United States Civil Service Commission v. National Association of Letter Carriers, AFL–CIO*, 413 U.S. 548, 564, 93 S.Ct. 2880, 2889–90, 37 L.Ed.2d 796, 808 (1973). In interpreting *Letter Carriers*, the Fifth Circuit stated that the Supreme Court's opinion contains no direct statement that mu-

nicipalities are precluded from placing restrictions on the nonpartisan activity of their employees. *Wachsman v. City of Dallas,* 704 F.2d 160, 165 (5th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 537, 78 L.Ed.2d 717 (1983). The court stated:

> "[E]ven if Hatch Act type restrictions imposed on its employees by the federal government, where the relevant politics are essentially partisan, would be constitutionally invalid if generally extended to nonpartisan political activity, it would not necessarily follow that municipalities whose relevant politics are essentially nonpartisan would not be able to constitutionally impose restrictions applicable to their nonpartisan elections on municipal employees." *Id.*

The First Circuit, in *Magill v. Lynch,* 560 F.2d at 26, has also declined to declare restrictions imposed by a governmental entity on its employees invalid merely because the elections of that entity are nonpartisan. The government can place restrictions upon its employees even in nominally nonpartisan elections if political parties play a large part, the court held, but these restrictions are still subject to a balancing of the government's and the defendant's First Amendment interests.

Several courts have applied this balancing test and have upheld prohibitions against dual position holding that were not restricted to partisan offices. In *Commonwealth ex rel. Toole v. Yanoshak,* 464 Pa. 239, 346 A.2d 304 (1975), the court upheld a statute that prohibited certain named officers and their chief clerks or deputies from holding the office of county controller during their terms in office and for two years thereafter, finding that the statute protected the state's compelling interest in preventing official misconduct. Similarly, in *Haskins v. State ex rel. Harrington,* 516 P.2d 1171 (Wyo.1973), the court held that positions of school teacher and member of the board of trustees of the school district presented a conflict in duties of the two positions that constituted an incompatibility not in the best interest of the school district or the general public. The court accordingly held that the teacher's office as trustee on the board had to be vacated.

In balancing the interests involved in the case at bar, we find that the prohibitions placed on the nonpartisan office of school-committee member are valid. The government has a strong interest in protecting its employees from entanglements caused by dual positions or even the appearance of such entanglements. *See Rogers v. Village of Tinley Park,* 116 Ill. App.3d 437, 443, 72 Ill.Dec. 1, 5, 451 N.E.2d 1324, 1328 (1983); *Reilly v. Ozzard,* 33 N.J. 529, 543, 166 A.2d 360, 367 (1960). Proper performance of defendant's duties as a school-committee member and also as a rehabilitation specialist in the City of Cranston Redevelopment Office is almost certain to create conflicting demands on his loyalties. The statute only requires that defendant chose one of two opportunities for the sole purpose of avoiding this conflict of interest; his right to engage in other political speech and activities, including the right to membership in political parties or to fundraising or to political-office seeking in a town other than where he works, is not affected. Although we agree that defendant has a right to hold this office, we are of the opinion that this right is outweighed by the government's interest in preventing a potential conflict of interest.

### III

The trial justice correctly determined that § 17–1–5.1 is constitutional against charges of overbreadth, vagueness and violation of equal protection. Since we find that the provisions of the statute place reasonable restrictions on the defendant's employment with the city of Cranston, we hold that the trial justice erred in refusing to apply the provisions of § 17–1–5.1 to the facts of the case at bar.

The plaintiffs' appeal is denied and dismissed in regard to § 2.07 of the Cranston City Charter. The plaintiffs' appeal is sustained, however, in regard to § 17–1–5.1,

and the papers are remanded to the Superior Court for further proceedings.