STATE

v.

David RUSSELL.

No. 2003–353–C.A.

Supreme Court of Rhode Island.

Jan. 30, 2006.

Diane Daigle, Esq., for Plaintiff.

Paula Rosin, Esq., for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on October 24, 2005, on the state's appeal from a Superior Court judgment that dismissed a criminal complaint charging the defendant, David Russell (defendant), with disorderly conduct. The defendant did not participate in this appeal. In light of the importance of the issues raised in this case, this Court, on March 30, 2005, issued an order inviting *amicus curiae* briefs from the Public Defender and other interested parties. The Court gratefully acknowledges the joint brief and participation in oral argument by the Office of the Public Defender, the Criminal Defense Clinic of Roger Williams University School of Law, and the Rhode Island Association of Criminal Defense Attorneys (*amici*), and an *amicus curiae* brief submitted by the Rhode Island Affiliate of the American Civil Liberties Union.

Before the Supreme Court, the state argues that the hearing justice erred by dismissing the complaint and by construing G.L.1956 § 11–45–1(a)(1) as unconstitutionally void for vagueness when applied to disorderly conduct occurring in the home. The state requests that the judgment be vacated, the complaint be reinstated, and the case be remanded to the Superior Court for further proceedings. For the reasons stated herein, we vacate the judgment and remand the case to the

Superior Court with directions to reinstate the complaint.

## Facts and Travel

■■■ The events leading to this appeal are based on a Warwick Police Department affidavit and the hearing justice's written decision. The hearing justice did not conduct an evidentiary hearing, in disregard of our holding in *State v. Fonseca,* 670 A.2d 1237 (R.I.1996), in which we declared that "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand[.]" *Id.* at 1240. (quoting *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975)). Because there is no suggestion that the First Amendment is implicated in this case, an evidentiary hearing was in order.[1] However, because the salient facts are not disputed, we shall decide this appeal based upon the limited record before us. Nevertheless, we emphasize that trial justices should not lightly undertake a constitutional analysis of penal statutes, as applied to a specific defendant, without compiling a factual record.

According to the police report and the facts relied upon by the trial justice, on September 3, 2002, Warwick police officers responded to a report of a domestic disturbance at the home defendant shared with his wife, Linda Russell (wife or Mrs. Russell). During a heated argument with his wife, in which defendant demanded that the family home be sold or he would destroy it, defendant turned over the dining room table and threw a chair through a screened porch window into the yard. The defendant's wife called the police, and defendant fled the scene. According to the responding police officers, they observed a beverage stain on the dining room wall, a ripped window screen on the porch where the chair was thrown, and other debris that defendant had tossed into the yard. A warrant was issued for defendant's arrest, and on October 23, 2002, he surrendered. This prosecution ensued.

The defendant was charged with one count of disorderly conduct in violation of § 11–45–1(a)(1)[2] and G.L.1956 § 12–29–2.[3] In Superior Court, defendant moved to dismiss the complaint and alleged that the police lacked probable cause to charge him with disorderly conduct for behavior that occurred in his home and not in a public place. According to defendant, as applied to behavior in one's home, the statute is unconstitutionally "vague and indefinite."

---

1. The *amici,* citing *State v. Fonseca,* 670 A.2d 1237, 1240 (R.I.1996), contend that an evidentiary hearing is required only if there is a need to prove a contested allegation that defendant engaged in certain activity that he or she asserts is constitutionally protected. We disagree with this contention. Assertions of vagueness that do not implicate the First Amendment must be examined on an as-applied basis, and an evidentiary record is necessary for that review. *See Maynard v. Cartwright,* 486 U.S. 356, 361, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) (citing *United States v. Powell,* 423 U.S. 87, 92–93, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975)).

2. General Laws 1956 § 11–45–1, disorderly conduct, provides in part:

"(a) A person commits disorderly conduct if he or she intentionally, knowingly, or recklessly:

(1) Engages in fighting or threatening, or in violent or tumultuous behavior;

(2) In a public place or near a private residence that he or she has no right to occupy, disturbs another person by making loud and unreasonable noise which under the circumstances would disturb a person of average sensibilities[.]"

3. General Laws 1956 chapter 29 of title 12 is entitled "Domestic Violence Prevention Act." Disorderly conduct when committed by one family or household member against another is an enumerated offense. Section 12–29–2.

The defendant also argued that subsections (a)(1) and (a)(2) of § 11–45–1 must be read in conjunction with each other, thereby specifying that, to fall within the provisions of § 11–45–1(a)(1), the behavior, as required in § 11–45–1(a)(2), must be committed in a public place or in a private residence that the accused has no right to occupy.

The hearing justice correctly held that § 11–45–1(a) contains seven specific, mutually exclusive incidents of behavior that are prohibited and that none is incorporated into the other. However, she agreed with defendant and found that, to the extent disorderly conduct reached behavior occurring in an individual's home, it was unconstitutionally vague in violation of both state and federal guarantees of due process. The hearing justice, citing *State v. Authelet,* 120 R.I. 42, 385 A.2d 642 (1978), held that a person may not be found "criminally responsible for conduct which he could not reasonably understand to be proscribed." *Id.* at 45, 385 A.2d at 643 (quoting *State v. Levitt,* 118 R.I. 32, 36, 371 A.2d 596, 598 (1977)). In her analysis, she found that in most instances, the "fighting, threatening, violent, and tumultuous" language of the statute affords adequate warning to individuals of ordinary intelligence that their conduct was illegal; but as applied to disturbances in a private home, she found that § 11–45–1(a)(1) was unconstitutional.

As it relates to conduct occurring in the home, the hearing justice also declared that § 11–45–1(a)(1) fails to provide law enforcement officers and courts with sufficient standards to avoid arbitrary and discriminatory enforcement. The court reasoned that "[f]or a person to be guilty of disorderly conduct, the public or some member thereof must be disturbed." Thus, the hearing justice concluded that § 11–45–1(a)(1) applied "only to conduct

which occurred outside the person's private residence which he or she has a right to occupy or which disturbs one or more persons outside the home." Because defendant's conduct occurred within his home, the court granted the motion to dismiss. The state appealed.

## Standard of Review

◼ This Court undertakes statutory interpretation *de novo, State v. Martini,* 860 A.2d 689, 691 (R.I.2004), and we begin with a presumption that a legislative enactment is constitutional. *State ex rel. Town of Westerly v. Bradley,* 877 A.2d 601, 605 (R.I.2005). The party contesting the statute's constitutionality has "the burden of proving beyond a reasonable doubt that the challenged enactment is unconstitutional." *Id.* This Court "will attach 'every reasonable intendment in favor of * * * constitutionality' in order to preserve the statute." *Id.* (quoting *Gem Plumbing & Heating Co. v. Rossi,* 867 A.2d 796, 808 (R.I.2005)). In determining whether a statute is unconstitutionally vague as applied to an accused, this Court considers the enactment in light of the facts. *State v. Berberian,* 416 A.2d 127, 129 (R.I.1980). We will not indulge in hypothetical situations that would lead to absurd results. *See State v. Sahady,* 694 A.2d 707, 708 (R.I.1997) (When the facts show that defendant had adequate notice that his conduct was proscribed, "we see no reason to speculate whether the statute notifies a hypothetical defendant.").

## I

## Overbreadth

◼ In her written decision, the hearing justice found "that [§ ]11–45–1(a)(1) is capable of an overbroad interpretation and would, without limitation, be unconstitutional." To the extent this finding encompasses the overbreadth doctrine, we deem

it erroneous as a matter of law. The defendant argued that the statute was "void for being vague and indefinite," but did not challenge the disorderly conduct statute on overbreadth grounds. Although we question whether this was preserved for appellate review, we shall address it briefly herein.

The overbreadth doctrine arises when a statutory enactment is so broad in its sweep that it is capable of reaching constitutionally protected conduct. *Cranston Teachers Alliance Local No. 1704 AFT v. Miele*, 495 A.2d 233, 235 (R.I.1985). The overbreadth doctrine generally applies in the context of First Amendment freedoms and is intended to prevent the imposition of criminal penalties for the exercise of one's constitutional rights. *DiRaimo v. City of Providence*, 714 A.2d 554, 565 (R.I. 1998). The question of whether a statute is overly broad is separate and distinct from the issues raised by a vagueness challenge. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). The judicially created overbreadth doctrine "is strong medicine that should be employed sparingly and only as a last resort[.]" *Cranston Teacher's Alliance*, 495 A.2d at 235. When a limiting construction can be placed on a statute to save its constitutionality, an overbreadth analysis should be avoided. *Id.* Further, in cases that involve conduct and not speech, an enactment's overbreadth not only must be apparent, but also substantial in view of the conduct that legitimately may be restrained by the state. *Id.* Accordingly, an overbreadth challenge in this case is without merit.

## II
### Vagueness

A penal statute is void for vagueness in violation of the Fourteenth Amendment Due Process Clause if it "fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits * * * [or] authorize[s] and even encourage[s] arbitrary and discriminatory enforcement." *Bradley*, 877 A.2d at 605 (quoting *City of Chicago v. Morales*, 527 U.S. 41, 56, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999)). This constitutional principle is based on our judicial system's concept of fairness. *Authelet*, 120 R.I. at 45, 385 A.2d at 644. "If a criminal act is set forth in a statute in uncertain terms, the innocent may be trapped by inadequate warning of what the state forbids." *Id.* Thus, the Legislature must draft a criminal statute "to provide an ordinary citizen with the information necessary 'to conform his or her conduct to the law.'" *Bradley*, 877 A.2d at 605 (quoting *Morales*, 527 U.S. at 58). "These minimal requirements for enforcement of penal laws 'prevent standardless sweep[s that] allow[] policemen, prosecutors, and juries to pursue their personal predilections.'" *Id.* (quoting *Kolender v. Lawson*, 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)).

### A
#### Notice and Arbitrary Enforcement

In her decision, the hearing justice determined that the words—fighting, threatening, violent and tumultuous—as set forth in § 11–45–1(a)(1) were "sufficiently clear to inform an individual of ordinary intelligence that his or her conduct is prohibited by the statute." Nevertheless, she found that the statute failed to inform a person that this same conduct, occurring within one's home and in the presence of other family members, also was illegal. We disagree.

The state argues that § 11–45–1(a)(1) survives a vagueness challenge because it

affords adequate notice to ordinary people that fighting, threatening, violent, or tumultuous conduct is unlawful. According to the state, the statute provides adequate standards for police and judicial officers to prevent arbitrary enforcement.

■ The test for evaluating the notice part of a vagueness challenge was addressed by the United States Supreme Court in *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972):

> "[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning."

*Village of Hoffman Estates*, 455 U.S. at 498, 102 S.Ct. 1186. This test—whether a person of ordinary intelligence has a reasonable opportunity to know what is prohibited—is not applied mechanically. A vagueness challenge in a criminal statute is examined under a stricter standard than a statute that provides for civil penalties because the consequences of ambiguity in the civil context are much less severe. *Id.* at 498–99, 102 S.Ct. 1186.

According to § 11–45–1(a)(1), "[a] person commits disorderly conduct if he or she *intentionally, knowingly,* or *recklessly* * * * [e]ngages in fighting or threatening, or in violent or tumultuous behavior[.]" (Emphases added). The hearing justice overlooked the *mens rea* component and failed to consider that, to fall within its provisions, a person must act "intentionally, knowingly, or recklessly." In *Colautti v. Franklin*, 439 U.S. 379, 395, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979), the United States Supreme Court held "that the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea.*" A *mens rea* requirement often defeats a vagueness challenge because the state of mind element is used to signify the defendant's guilty knowledge. *See Morales*, 527 U.S. at 111, 119 S.Ct. 1849.

■ "Vagueness challenges under the [D]ue [P]rocess [C]lause rest principally on lack of notice." *Sahady*, 694 A.2d at 708. We fail to see how the defendant in this case could not appreciate that throwing furniture around his residence during a violent disagreement with his wife, in which he threatened to destroy the home if he did not get his way, was prohibited conduct that would subject him to arrest, prosecution and, potentially, a domestic abuse restraining order. The fact that he fled the scene before the police arrived is evidence of actual knowledge. We are satisfied that as applied to the facts in this case, defendant was reasonably informed that his conduct could lead to arrest and prosecution.

The hearing justice also found that the statute "fails to set forth sufficient standards to guide law enforcement officers and the court to avoid arbitrary and discriminatory enforcement." In *Grayned*, 408 U.S. at 108–09, 92 S.Ct. 2294 the United States Supreme Court held:

> "[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application."

The statute at issue sets forth in plain language what conduct is considered disorderly; its plain language supplies sufficient standards to allow police officers, judges, and fact-finders to apply the law to the

facts of a particular case. Responding police officers are not confronted with the difficult task of differentiating between a public or private place, or determining who, if anyone, is the complainant, and his or her relationship to the arrestee. Because the statute does not contain a geographical or temporal component, or even a requirement that there be a victim, *see Martini,* 860 A.2d at 693 ("disorderly conduct is not necessarily a crime against a person"), the risk of arbitrary enforcement is diminished.

Having determined that the legislative enactment passes constitutional scrutiny, we decline to speculate how the statute may be applied to a hypothetical offender. We are satisfied that § 11–45–1(a)(1) sets forth the proscribed conduct with sufficient particularity to notify a person of ordinary intelligence what is prohibited and, therefore, it withstands a vagueness challenge.

### B

### Disorderly Conduct in the Home

▇ The defendant alleged and the *amici* argue to this Court that when considered collectively, the words "fighting, threatening, violent, and tumultuous," indicate a legislative intent to prevent a public disturbance or breach of the public peace. However, § 11–45–1(a)(1) does not specify that conduct must occur in a public place in contrast to § 11–45–1(a)(2) which does so specify that disorderly conduct refers to "loud and unreasonable noise" in a public place or near a private residence that the accused had no right to occupy, "which under the circumstances would disturb a person of average sensibilities[.]" If the Legislature intended to limit the reach of § 11–45–1(a)(1) to conduct occurring in public, it could have done so. However, there is no suggestion in subsection (a)(1) that the behavior must occur in a public

place or be directed at a member of the public and we are not persuaded that such a requirement was intended by the Legislature.

In performing this analysis, we emphasize that there were at least two people living in the home on the evening in question; one was throwing furniture and the other called the police. It is our opinion that Mrs. Russell was entitled to be free from the defendant's violent and threatening behavior and had every right to seek the intervention of the Warwick Police Department. If we adopted the trial court's reasoning and the arguments of the *amici,* the defendant's activities would be immune from police involvement simply by virtue of the location. The police would have no authority to enter the home to arrest or restrain defendant. This is an absurd result that we decline to attribute to the Legislature. Domestic violence is a crime that, by definition, occurs within a family or a home where more than one person resides. We reject the contention that the home is off-limits to the police who may be summoned in an emergency; nor are we persuaded that violent conduct occurring in the home is insulated from arrest and prosecution.

Disorderly conduct is an enumerated crime of domestic violence under § 12–29–2 of the Domestic Violence Prevention Act, the declared purpose of which "is to recognize the importance of domestic violence as a serious crime against society and to assure victims of domestic violence the maximum protection from abuse which the law and those who enforce the law can provide." Section 12–29–1(a). The protection of family members from violent and threatening behavior by one household member is the statutory policy of this state; to prevent "differing treatment of crimes occurring between family or household members and of the same crimes

**462**

occurring between strangers." Section 12–29–1(b). Our penal statutes shall "be enforced without regard to whether the persons involved are or were married, cohabitating, or involved in a relationship." Section 12–29–1(c). Obviously, the Domestic Violence Prevention Act applies to crimes occurring in the home.

The *amici* have raised a number of hypothetical situations to support the contention that prosecutions for conduct that do not amount to a breach of the public peace may lead to absurd results. However, this Court's review of a vagueness challenge to a statute is limited to "the facts of the case at hand." *Fonseca,* 670 A.2d at 1240 (quoting *Mazurie,* 419 U.S. at 550, 95 S.Ct. 710). We will not consider how the statute may apply to a hypothetical defendant in another case; nor do we accept the argument that defendant was merely engaging in "a form of expressive conduct, and a rather minor form at that." The *amici* contend that rather than "taking his anger out on some furniture, [defendant] might have given voice to his frustration." As such, according to the *amici,* he could not be charged with a violation of § 11–45–1(a)(1). Unfortunately, defendant did not behave in a civilized manner and elected to threaten his wife and throw their furniture around the house and into the yard. This is not constitutionally protected conduct.

### III

### Substantive Due Process

In her written decision, the hearing justice found that the arrest and prosecution of defendant for conduct occurring in his private home was a violation of his right to substantive due process because the statute "inhibits the exercise of basic freedoms." She declared:

"The Family Court was created to deal with all facets of family life. To the extent that the disorderly conduct statute criminalizes noisy and boisterous behavior in the home, it invites the state to intrude into domestic matters beyond that which may be necessary for the protection of the safety of family members."

Before this Court, the *amici* argue that § 11–45–1(a)(1) cannot constitutionally apply to conduct in the home because, they contend, "a fundamental liberty interest is at stake in this case." According to the *amici,* "the right of a married couple (or family members living under the same roof) to be free from unwarranted state interference" into their private interpersonal relationships is at risk in this case.

After a thorough examination of the record, we conclude that defendant failed to make a substantive due process argument in the Superior Court and this issue is not properly before the Supreme Court. This Court will not consider an issue raised on appeal that was not presented to the trial court. *State v. Breen,* 767 A.2d 50, 57 (R.I.2001). Although we have recognized a narrow exception to the raise-or-waive rule when "basic constitutional rights are concerned," *State v. Mastracchio,* 672 A.2d 438, 446 (R.I.1996), the defendant's assertion does not meet the strict requirements of that exception.

We pause to note however, that § 11–45–1(a)(1) is not directed to "noisy and boisterous behavior in the home." This subsection prohibits a person from "intentionally, knowingly, or recklessly" engaging in "fighting or threatening, or in violent or tumultuous behavior." *Id.* The trial justice also declared that "some domestic disputes fall outside the realm of criminal conduct." This observation certainly is true; it is only when those disputes escalate into fighting or violent or threatening behavior that the criminal law becomes operable.

We also respectfully disagree with the suggestion that a fundamental liberty interest was infringed in this case. Although the *amici* point to several landmark opinions of the United States Supreme Court including the right to privacy in the marital relationship, *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); the fundamental rights of natural parents with respect to the care and custody of their children, *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); the right to marry, *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); and the right to engage in certain private interpersonal relationships, *Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), none of these cases remotely is relevant to the issues before this Court. The defendant was arrested for disorderly conduct based on his *wife' s* telephone call to the police. We are satisfied that no constitutionally protected liberty interests were affected in this case and we are not aware of any judicial precedent supporting the contention that the defendant's behavior was protected by the Constitution. We agree with the state that neither the state nor federal Constitution guarantees the right to throw furniture against the wall or through the window.

## Conclusion

For the reasons stated herein, we vacate the judgment of the Superior Court. The record shall be remanded to the Superior Court for further proceedings consistent with this decision.