DECISION
In this declaratory judgment action, filed pursuant to G.L. 1956 § 9-30-1 et seq., V. George Mitola and Carol A. Mitola ("Mitolas") have moved for summary judgment on the question whether G.L. 1956 § 45-50-13 et seq. is unconstitutionally vague, allowing the Providence Public Buildings Authority to commence condemnation proceedings in an arbitrary and discriminatory manner.
 Facts and Travel
On February 25, 1988, the City Council of Providence, Rhode Island requested that the Providence Public Buildings Authority ("Authority"), created pursuant to Section 45-50-1 et seq. of the Rhode Island General Laws, use its best efforts to acquire certain real property at the Scituate Reservoir for the purpose of protecting the watershed. Section 45-50-13(a) empowered the Authority to acquire by eminent domain the development rights[1] in multiple parcels of real property, including the parcel owned by *Page 2 
V. George Mitola and Carola A. Mitola ("Mitolas"), identified as Lot 1 on Plat 38 ("Property") of the Maps of the Tax Assessor of Scituate, Rhode Island.[2] The Mitolas purchased the property in 2002. In 2005, the Authority sought the acquisition of the development rights of the Property.
On December 14, 2004, the Mitolas had received a permit from the Rhode Island Department of Environmental Management, allowing the construction of a four bedroom house and terming the project an insignificant alteration to freshwater wetlands.[3] On January 27, 2005, the Mitolas, through the Caito Corporation, provided the Town of Scituate Planning Department documentation for the Master Plan of an eight lot *Page 3 
residential subdivision of the Property. On May 3, 2005 the Mitolas were issued a building permit for a four bedroom house on the Property.[4]
In accordance with § 45-50-13(a)(6), [5] the Authority appointed Mark F. Bates, MAI, of Integra Realty Associates as its appraiser to determine the fair market value of the development rights of the Property. The Authority notified the Mitolas of Mr. Bates's appointment in a letter authored by the Authority's attorney, Mal A. Salvadore, Esq., and dated May 19, 2006. The letter requested that the Mitolas appoint their own appraiser to determine the fair market value of the development rights of the Property in accordance with § 45-50-13(a)(6). The Authority has completed its appraisal of the development *Page 4 
rights of the Property. The Authority filed a complaint on August 21, 2006, alleging that the Mitolas had refused to appoint an appraiser. The Authority requested that this Court issue an order compelling the Mitolas to appoint an appraiser to determine the fair market value of the development rights of the Property and to complete such appraisal within the timeframe established by § 45-50-13(a)(6)(ii).[6]
Alternatively, the Authority requested that this Court appoint an appraiser on behalf of the Mitolas to render an opinion of the fair market value of the development rights.
The Mitolas' answer, filed on October 25, 2006, denied that they had refused to appoint an appraiser and contained a counterclaim. The Mitolas' counterclaim asserted that the Authority selected the Mitolas' land in an arbitrary and capricious manner, violating their equal protection rights "guaranteed under the 5th and 14th Amendments of the Rhode Island and U.S. Constitutions." (Counterclaim ¶ 5.[7]) The Mitolas also alleged that the Authority selected their land without sufficient criteria or standards, amounting to a due process violation under the Fifth andFourteenth Amendments of the Rhode Island *Page 5 
and United States Constitutions.[8] The Mitolas have sought a declaration that the Authority has used the eminent domain process in an arbitrary and capricious manner in violation of their constitutional rights under the Rhode Island and United States Constitutions. Additionally, they requested an order that the Authority stop all eminent domain proceedings until a final hearing on the merits of this case occurs.[9]
On August 30, 2007, the Authority moved for summary judgment on each and every claim in its complaint. The Authority argued that the only allegation in its complaint that the Mitolas denied was that the Mitolas had refused to appoint an appraiser. Further, the Authority contended that the Mitolas' mere denial in their answer could not sustain a denial of the motion for summary judgment. Also, on August 30, 2007, the Plaintiff moved for a preliminary injunction to enjoin further development of the property by the Mitolas, arguing that any continued development of the Property would result in its further degradation for the purposes of protecting the watershed.
On February 4, 2008, a Superior Court Justice entered a consent order restraining and enjoining the Mitolas in any further development of the Property, including without limitation, the cutting of trees, other vegetation, the installation of any infrastructure and/or roadways, except for the installation of a driveway servicing the Mitolas' residence, which driveway was to be constructed in a manner and with materials that utilize the best management practices for water quality protection in force in Rhode Island as established by the Rhode Island Department of Environmental Management. *Page 6 
On August 22, 2008, the Mitolas filed a complaint alleging that their rights as property owners will be adversely and irreparably affected if this Court does not enter a declaratory judgment declaring § 45-50-13et seq., [10] as amended, unconstitutional as its implementation violates the Mitolas' due process rights guaranteed by article 1, section 2 of the Rhode Island Constitution as well as the Fifth andFourteenth Amendments of the United States Constitution.[11] Further, the Mitolas allege that § 45-50-13 allowed for condemnation proceedings to be done in an arbitrary and discriminatory manner.[12] In their complaint for declaratory judgment, the Mitolas assert that on September 25, 2007, they appointed William E. Coyle, III from William E. Coyle, Jr. Associates to determine the fair market value of the Property.[13] On September 23, 2008, the Mitolas moved for summary judgment on the Complaint for Declaratory Judgment.[14]
 Standard of Review
Rule 56 of the Rhode Island Superior Court Rules of Civil Procedure empowers a trial justice, upon proper motion, to enter summary judgment. Our Supreme Court has established that:
 Summary judgment is appropriate when, after viewing the admissible evidence in the light most favorable to the nonmoving party, `no genuine issue of material fact is evident from "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" and the motion justice finds that the moving party is entitled to prevail as a matter of law.' *Page 7 Santana v. Rainbow Cleaners, 969 A.2d 653
(R.I. 2009) (quoting Smiler v. Napolitano, 911 A.2d 1035, 1038 (R.I. 2006) (quoting Super. R. Civ. P. 56(c)).
In considering a motion for summary judgment, the court does not weigh the evidence or make credibility determinations. Weaver v. AmericanPower Conversion Corp., 863 A.2d 193, 200 (R.I. 2004) (citingPalmisciano v. Burrillville Racing Assoc., 603 A.2d 317, 320 (R.I. 1992)). Further, the "`purpose of the summary judgment procedure is issue finding, not issue determination.'" Estate of Giuliano v.Giuliano, 949 A.2d 386, 391 (R.I. 2008) (quoting Industrial Nat'lBank v. Peloso, 121 R.I. 305, 307, 397 A.2d 1312, 1313 (1979)). Accordingly, "the only task of a trial justice in passing on a motion for summary judgment is to determine whether there is a genuine issue concerning any material fact." Peloso, 121 R.I. at 307,397 A.2d at 1313 (citation omitted). When no such issue exists, the case is ripe for summary judgment. Id. at 308, 1313.
 Law and Analysis
The Mitolas contend that § 45-50-13 violates their due process rights guaranteed by article 1, section 2 of the Rhode Island Constitution, as well as the Fifth and Fourteenth Amendments of the United States Constitution. In 1987, our General Assembly enacted the Municipal Public Buildings Authorities Act to empower "each city and town to establish a Public Building Authority . . . which would afford each community an alternative financing and administrative mechanism to effectuate certain enumerated types of public-improvement projects." Gorham v. Pub.Bldg. Auth. of City of Providence, 612 A.2d 708, 709 (R.I. 1992). Pursuant to this authorization, in 1988, the Providence City Council and the Public Finance Management Board of Rhode Island authorized the creation of the Providence Public Buildings Authority. Id. In 1989, our *Page 8 
General Assembly amended § 45-50-13 so that the Authority "could acquire by eminent domain either the development rights to, or fee simple ownership of, certain properties, including but not limited to properties surrounding the Scituate Reservoir." Id. The statute at issue, § 45-50-13 provides in relevant part:
 (a) The authority has the right to acquire any land, or any interest in it, including development rights, by the exercise of the power of eminent domain, whenever it is determined by the authority that the acquisition of the land, or interest, is necessary for the construction or the operation of any project.
 (1)(i) The power of eminent domain shall be exercised only within the boundaries of the city or town whose council established the authority, except that any authority in existence on the effective date of this chapter shall have the power to acquire, by exercise of eminent domain, only the development rights, except as stated in subsection (a)(5), in the land described in the tax assessor's plats for the towns of Foster, Scituate, Johnston, and Glocester, as of February 14, 1989, for the purpose of protecting the water supply as follows:
 (ii) . . . that certain land situated in the town of Scituate delineated as Scituate tax assessor's lot 1, plat 38 consisting of 67 acres, more or less;. . . .
The Mitolas' contend that § 45-50-13 is unconstitutionally vague in violation of their due process rights.[15] This Court notes that in reviewing the constitutionality of a statute, "`[t]he Legislature is presumed to have acted within its constitutional power.'" GemPlumbing Heating Co., Inc. v. Rossi, 867 A.2d 796, 808 (R.I. 2005) (quoting Burrillville Racing Association v. State, 118 R.I. 154,157, 372 A.2d 979, 982 (1977)). The party challenging a statute's constitutionality bears the burden of proving that the *Page 9 
statute is unconstitutional beyond a reasonable doubt. Id. (citingRhode Island Insurers' Insolvency Fund v. Leviton Mfg. Co.,716 A.2d 730, 734 (R.I. 1998)).
Further, "[a] vagueness challenge requires [courts] to examine the enactment to determine whether it is `impermissibly vague in all of its applications,' in violation of due process." State ex rel. Town ofWesterly v. Bradley, 877 A.2d 601, 605 (R.I. 2005) (quotingVillage of Hoffman Estates v. The Flipside, Hoffman Estates,Inc., 455 U.S. 489, 494-95 (1982) (further citation omitted)). Our Supreme Court has established that for a statute "to be unconstitutionally vague and therefore violative of the due-process clause of the Fourteenth Amendment to the Constitution of the United States, the statute must fail to alert the public of the statute's scope and meaning." Bellevue Shopping Center Associates v. Chase,574 A.2d 760, 764 (R.I. 1990) (citing City of Warwick v. Aptt,497 A.2d 721, 723-24 (R.I. 1985)). A statute is unconstitutionally vague if it leaves "`a person of average intelligence to guess and to resort to conjecture as to its meaning and/or as to its supposed mandated application.'" Kaveny v. Town of Cumberland Zoning Bd. ofReview, 875 A.2d 1, 10 (R.I. 2005) (quoting Trembley v. City ofCentral Falls, 480 A.2d 1359, 1365 (R.I. 1984)) (citing Bourque v.Dettore, 589 A.2d 815, 822-23 (R.I. 1991) (establishing that the void for vagueness test examines whether a person of ordinary intelligence would understand the language at issue)). Additionally, "it is well settled that a statute is unconstitutionally vague if it lacks explicit standards from its application and thus delegates power that enables enforcement officials to act arbitrarily with unchecked discretion."Fitzpatrick v. Pare, 568 A.2d 1012, 1013 (R.I. 1990) (citingGrayned v. City of Rockford, 408 U.S. 104, 108-09 (1972)). *Page 10 
Citing City of Norwood v. Horney, 110 Ohio St.3d 353,853 N.E.2d 1115 (2006), the Mitolas contend that the statutory scheme permits the Authority to make ad hoc decisions to condemn property based upon the statutory goal of "protecting the water supply." Section 45-50-13(a)(1)(i). In City of Norwood, a city had determined that certain property owners' neighborhood was a "deteriorating area," as defined by the Codified Ordinances of the City of Norwood ("Norwood Code").[16] Upon this determination, the city appropriated the owners' property. Though the Ohio Supreme Court noted that vagueness doctrine is usually applied in the criminal law and First Amendment context, it found its underpinnings, as outlined by the United States Supreme Court, applicable in the eminent domain context as well:
 `Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to police [officers], judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' City of Norwood, 110 Ohio St.3d at 379-80, *Page 11 853 N.E.2d at 1142-43 (quoting Grayned v. Rockford, 408 U.S. 104, 108-109 (1972)).
Despite the litany of factors listed in the Norwood Code defining "deteriorating area," the City of Norwood Court found that the ordinance offered "so little guidance in application that it is almost barren of any practical meaning." Id. at 382, 853 N.E.2d at 1145. Further, "[r]ather than affording fair notice to the property owner, the Norwood Code merely recites a host of subjective factors that invite ad hoc and selective enforcement. . . ." Id. The Ohio Supreme Court held that "the use of `deteriorating area' as a standard for determining whether private property is subject to appropriation is void for vagueness and offends due-process rights because it fails to afford a property owner fair notice and invites subjective interpretation."Id.
This Court notes that, unlike the Ohio Supreme Court, our Supreme Court has never applied vagueness doctrine to a statute granting the power of eminent domain. Accordingly, our Supreme Court has never stated that eminent domain statutes or bodies authorized to exercise eminent domain must provide fair notice to property owners. For example, inPaiva v. Providence Redevelopment Agency, 116 R.I. 315,356 A.2d 203 (1976), a landowner argued that he was entitled to actual notice of the Providence Redevelopment Agency's pre-taking hearing, during which his property was deemed substandard nonresidential, by the due process provisions of the Fifth and Fourteenth Amendments to the United States Constitution. Our Supreme Court noted that "the right to a hearing attaches only to the deprivation of an interest encompassed within the [F]ourteenth [A]mendment and that the right to a hearing prior to the taking of property by eminent domain is not such a right." Id.
at 320, 356 A.2d at 206 (citing Golden Gate Corp. v. Sullivan,112 R.I. 641, 644 314 A.2d 152, 154 (1974)). Further, our Supreme *Page 12 
Court held that "not being constitutionally entitled to a hearing prior to the condemnation, [the landowner] was thus not entitled to personal notice of the [pre-taking] hearing. . . ." Id. at 322,356 A.2d at 206; see Rhode Island Economic Development Corp. v. The Parking Co.,L.P., 892 A.2d 87, 102 (stating that the "Due Process Clause does not guarantee a property owner any particular form or method of state procedure[]") (citation omitted); 16D C.J.S. Constitutional Law
§ 1858 at 207 (2005) (providing that the "requirements of due process of law generally are fulfilled if the owner of the property taken is given reasonable notice of the proceedings and a reasonable opportunity to be heard respecting his or her rights before the entry of a final decree or award of condemnation[]") (footnote omitted). This Court finds, in light of Paiva, that our Supreme Court would not apply vagueness doctrine to an eminent domain statute to ensure fair notice because property owners are not entitled to pre-deprivation hearings. SeePaiva, 116 R.I. at 322, 356 A.2d at 206; State v. Russell,890 A.2d 453, 460 (R.I. 2006) (stating that "`[v]agueness challenges under the [D]ue [P]rocess [C]lause rest principally on lack of notice[]'") (quoting State v. Sahady, 694 A.2d 707, 708 (R.I. 1997)). Additionally, in the eminent domain context, fair notice is not necessary to guide property owners between lawful and unlawful conduct.See Russell, 890 A.2d at 460 (citing Grayned,408 U.S. at 108) (further citation omitted).
Assuming arguendo that our Supreme Court would consider a vagueness challenge to § 45-50-13 appropriate, this Court finds that § 45-50-13 is not unconstitutionally vague beyond a reasonable doubt.City of Norwood is distinguishable from the case at bar because rather than listing subjective criteria for the Authority's determination of which properties should be selected "for the purpose of protecting the *Page 13 
water supply," the General Assembly has listed specific properties subject to the Authority's power of eminent domain. This specificity provides fair notice[17] for those owners whose properties are listed and precludes the possibility that Authority decisions will be made on an "ad hoc and subjective basis." See City of Norwood,110 Ohio St.3d at 379, 853 N.E.2d at 1142 (quoting Grayned,408 U.S. at 108-09). Because § 45-50-13 is unambiguous, a person of average intelligence need not guess at its meaning. See Kaveny,875 A.2d at 10. As our Supreme Court has explained, "[w]here the terms of [a statute] are unambiguous on their face . . . that [statute] does not violate the due-process clause of the Fourteenth Amendment." SeeTrembley, 480 A.2d at 1365.
 Conclusion
Accordingly, this Court is not convinced that a vagueness challenge to an eminent domain statute is a challenge our Supreme Court would entertain. Assuming, arguendo, that a vagueness challenge is appropriate, this Court finds that § 45-50-13 is not unconstitutionally vague beyond a reasonable doubt. The Mitolas' motion for summary judgment on their complaint for declaratory judgment is denied. Although it appears that no genuine issue of material fact exists, without a cross-motion for summary judgment, this Court will reserve further judgment on the Mitolas' complaint for declaratory judgment. Cf.Thomas v. Ross, 477 A.2d 950, 953 (R.I. 1984) (stating that a "trial justice should grant summary judgment against the moving party only if it is clear that no issue *Page 14 
of material fact exists and that the nonmoving party is entitled to judgment as a matter of law[]").
Counsel shall prepare an appropriate judgment for entry.
[1] Section 45-50-13 defines development rights as follows:
 (4)(i) For the purposes of this section, the term "development rights" means the rights to:
 (A) Prohibit the ability of the fee owner to act on or with respect to or regarding uses of a land or water area; or
 (B) Require the performance by the fee owner of acts on or with respect to or regarding uses of a land or water area, which prohibition or requirement retains or maintains the land or water area in its natural condition or any other condition that is consistent with the protection of environmental quality or provides the public with the benefit of the unique features of the land or water area, provided, that development rights will not be construed to deprive the original owner, his or her successors or assigns, of the right to continue to use the land for agricultural purposes so long as that use conforms to acceptable agricultural practices as established by the department of the environment and/or the United States soil conservation service.
 (ii) "Development rights" may also have any meaning as may be mutually agreed upon by the fee owner and the authority in any contract, agreement, deed to development rights, or proceeding before the authority. The proceeding shall be initiated by a fee owner's filing a petition before the authority and/or any lessee or successor agency seeking permission to use the land or water area for development. The authority has sixty (60) days to determine if the activity described in the petition endangers the environmental quality of the land or water area. Upon a finding of no danger to the environmental quality of the land or water area, the authority shall grant the petition; provided, if no finding is made within sixty (60) days the petition is deemed approved.
[2] The Property's residential address is 21 Country View Lane, North Scituate, Rhode Island 02857.
[3] This permit applied to the Property as well as Assessor's Plat 38, Lots 66 and 67.
[4] The Mitolas have indicated to this Court that they have constructed their home on the Property and live there with their two minor daughters.
[5] Section 45-50-13(a)(6) provides:
 (ii) Each party (the authority and the landowner) shall appoint one appraiser (who shall be a qualified member of the American institute of real estate appraisers, the society of real estate appraisers, the American society of farm managers and rural appraisers, the international association of assessing officers, the national society of real estate appraisers, the national society of independent fee appraisers, the American society of appraisers or the international right of way association, or any successor organization). Each appraiser shall, within twenty (20) business days of his or her appointment, arrive at an independent determination of the fair market value of the property. If the difference between the two (2) appraisals as so determined does not exceed ten percent (10%) of the lesser of the two (2) appraisals, then the fair market value is deemed to be an amount equal to fifty percent (50%) of the sum of the two (2) appraisals. If the difference between the appraisals exceeds ten percent (10%) of the lesser appraisal, then the two (2) appraisers have ten (10) calendar days within which to appoint a third appraiser, who shall, within twenty (20) calendar days, make his or her own independent determination of the fair market value of the property. All three (3) appraisals shall then be compared and the appraisal which differs most in dollar amount from the other two (2) appraisals shall be excluded from consideration, and the fair market value of the property shall be deemed to be fifty percent (50%) of the sum of the remaining two (2) appraisals. The authority shall make an offer to purchase the property or rights in property based upon the fair market value, which offer shall remain open for thirty (30) days or until the time the offer is accepted or rejected. If the offer of the authority is rejected, the authority may proceed with condemnation proceedings within ten (10) days.
[6] Although the Authority did not cite § 45-50-13(h)(1), this Court notes that it grants this Court authority to enter orders in this proceeding:
 (h) In any proceedings for the assessment of compensation and damages for land or interest in it taken, or to be taken by eminent domain by the authority, the following provisions are applicable:
 (1) At any time during the pendency of any action or proceeding, the authority or an owner may apply to the court for an order directing an owner or the authority, as the case may be, to show cause why further proceedings should not be expedited, and the court may, upon that application, make an order requiring that the hearings proceed and that any other steps be taken with all possible expedition.
[7] This Court notes that the Rhode Island Constitution does not have a Fifth or Fourteenth Amendment.
Rhode Island's equal protection provision is found in article 1, section 2 of the Rhode Island Constitution:
"No person shall be deprived of life, liberty or property without due process of law, nor shall any person be denied equal protection of the laws." Additionally, this Court notes that "the Fifth Amendment's equal-protection guarantee applies to federal action, not state action, and therefore is inapplicable in this case."
See State v. Faria, 947 A.2d 863, 867 n. 4 (R.I. 2008).
[8] Rhode Island's due process provision is also located in article 1, section 2 of the Rhode Island Constitution. See n. 3,supra.
[9] The Authority filed an answer to the Mitolas' counterclaim on October 27, 2006, denying that it had violated the Mitolas' constitutional rights and requesting that this Court deny and dismiss the counterclaim.
[10] Black's Law Dictionary defines et seq. as "those (pages or sections) that follow[.]" Black's Law Dictionary 592 (8th ed. 2004). Because the Mitolas have not specified which additional sections should be declared unconstitutional and why, this Court will only examine the constitutionality of § 45-50-13.
[11] The Authority filed an answer to the Mitolas' complaint for a declaratory judgment on September 12, 2008, praying that the Mitolas' claims for relief be denied and its complaint dismissed.
[12] The Mitolas also sought their costs and attorneys' fees.
[13] The Mitolas attached a letter to their complaint for declaratory judgment, purportedly mailed to Mal. A. Salvadore, Esq., attorney for the Authority, informing Attorney Salvadore of Mr. Coyle's appointment.
[14] The Authority objected to the Mitolas motion for summary judgment on the Complaint for Declaratory Judgment on October 10, 2008.
[15] The Mitolas have indicated to this Court that the Attorney General of Rhode Island has been served with a copy of their Complaint for Declaratory Judgment in accordance with G.L. 1956 § 9-30-11.
[16] Norwood Code 163.02(c) listed many factors to determine whether a neighborhood amounted to a "deteriorating area":
 an area, whether predominantly built up or open, which is not a slum, blighted or deteriorated area but which, because of incompatible land uses, nonconforming uses, lack of adequate parking facilities, faulty street arrangement, obsolete platting, inadequate community and public utilities, diversity of ownership, tax delinquency, increased density of population without commensurate increases in new residential buildings and community facilities, high turnover in residential or commercial occupancy, lack of maintenance and repair of buildings, or any combination thereof, is detrimental to the public health, safety, morals and general welfare, and which will deteriorate, or is in danger of deteriorating, into a blighted area. City of Norwood, 110 Ohio St.3d at 359, 853 N.E.2d at 1125 n. 5.
[17] The Mitolas cite the deposition testimony of Richard Blodgett, the Manager of Environmental Resources of the Providence Water Supply, to argue that a property owner does not have fair notice of whether the Authority will institute eminent domain proceedings under § 45-50-13. (Defendants' Memorandum In Support of Motion for Summary Judgment on the Complaint for Declaratory Judgment, Ex. 3, 31.) Additionally, the Mitolas argue that they had no idea that they would be targeted by the Authority when they purchased the Property, as their deed listed no restrictions. However, the unambiguous listing of an owner's property in § 45-50-13(a)(1)(ii) constitutes fair notice because "[i]t is a general rule of law that all persons must take notice of the public laws by which they are governed. . . ." 66 C.J.S. Notice § 17 (1998) at 452 (footnote omitted).