### JELL-O CO., Inc., v. LANDES et al.

Circuit Court · of Appeals, Ninth Circuit.
May 31, 1927.

No. 4982.

**1. Commerce ⬤⇒57—State or municipalities cannot burden interstate commerce under guise of regulating "intrastate business."**

State or its municipalities may not burden interstate commerce under guise of regulating intrastate business, and such business includes as necessary incident right to employ agents and other representatives to solicit contracts for sale of interstate commodities.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Business.]

**2. Commerce ⬤⇒40(1), 63—Manufacturer's distribution of advertising matter held not part of interstate commerce, and therefore subject to license · regulation by ordinance, notwithstanding contract with wholesalers to distribute matter.**

Distribution of advertising matter to householders by manufacturer residing outside state, dealing only with wholesalers *held* not part of interstate commerce, and therefore subject to regulation by city ordinance requiring license, notwithstanding contract with wholesalers to distribute such matter.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington.

Suit by the Jell-O Company, Inc., against Bertha K. Landes, substituted for Edwin J. Brown, Mayor of the City of Seattle, and others. From a decree dismissing the complaint, complainant appeals. Affirmed.

R. P. Oldham, D. G. Eggerman and Edw. L. Rosling, all of Seattle, Wash., for appellant.

Thomas J. L. Kennedy, Corp. Counsel, and Ray Dumett and Walter L. Baumgartner, Assistants to Corp. Counsel, all of Seattle, Wash., for appellees.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. This is an appeal from a final decree dismissing a complaint for injunctive relief. The appellant is a corporation organized under the laws of the state of New York, with its principal place of business at Le Roy, in that state, and is engaged in the manufacture and sale throughout the United States and Canada of food products sold under the trade names of Jell-O and Jell-O Ice Cream Powder. The products are manufactured and prepared in such manner as to comply with the pure food laws of the United States and of the state of Washington. When manufactured, the products are kept and stored by the appellant in the state of New York until shipped to different points throughout the United States and Canada in fulfillment of contracts of sale. The products are sold only to wholesalers, in the original packages. The appellant does not sell directly to either retailers or consumers. In taking orders the appellant contracts and agrees with purchasers that it will, through its own agents, distribute samples of its products to householders, and will in like manner distribute recipe booklets advertising and showing the practical use of the products. The samples and booklets are thus distributed pursuant to agreements with purchasers, and likewise as a part of the general policy of the appellant for the purpose of advertising its products. Such has been its policy and custom for a long period of years.

The city of Seattle is a distributing point from which deliveries are made in the states of Washington, Idaho, and Oregon. Shipments destined for these points are consigned by the appellant to itself at Seattle for the purpose of effecting freight savings by combining shipments to central points. The shipments are made by boat, and upon arrival the original packages are reshipped to points in Oregon, Washington, and Idaho, and the balance of the shipments, if any, is temporarily held to be sold by the appellant

through its Seattle representatives in the original packages. There is in force in the city of Seattle a general and comprehensive license ordinance, section 92 of which provides:

"It shall be unlawful for any person to distribute, within the city of Seattle, advertising matter of any kind from house to house, without first procuring a license so to do, to be known as a 'monthly distributor's license,' or a 'weekly distributor's license.'"

The purpose of the present suit was to restrain the city and its officers from enforcing the provisions of this ordinance, as against the appellant, upon the ground that the distribution of samples and advertising matter is a part of interstate commerce, and that the ordinance in question imposes an unlawful burden upon such commerce.

[1, 2] It is well settled that a state or its municipalities may not burden interstate commerce under the guise of regulating intrastate business, and that such business includes as a necessary incident the right to employ agents and other representatives to solicit contracts for the sale of interstate commodities. Real Silk Mills v. Portland, 268 U. S. 325, 45 S. Ct. 525, 69 L. Ed. 982, and cases there cited. But the appellant maintains no business relations with the householders of the city of Seattle or with the ultimate consumers of its products and is not engaged in trade with them, interstate or otherwise. It sells its products to wholesalers only, and the city has imposed no burdens on such sales or on the agencies through which they are consummated. We are not concerned, therefore, with the power of the city to impose direct burdens on interstate commerce. We are only concerned with the right of manufacturers and wholesalers residing in other states to distribute advertising matter in the city of Seattle, without first obtaining a license authorizing them so to do. The object of the advertising is doubtless to increase the demand for the products, thus increasing the business and sales of the appellant, but a regulation of the business of advertising affects interstate commerce only incidentally and indirectly. Nearly all merchandise sold in large cities has at some time passed through interstate commerce, and if manufacturers and wholesalers residing in other states can carry on an advertising campaign within a city by distributing samples and pamphlets in disregard of all municipal regulations, the police power of the state is far less comprehensive than has generally been supposed. It would serve no purpose to attempt a review of the many decisions holding that the regulations

under review imposed an unlawful burden on interstate commerce, or the reverse.

"The line of demarcation between that which constitutes an interference with commerce, and that which is a mere police regulation, is sometimes exceedingly dim and shadowy, and it is not to be wondered at that learned jurists differ when endeavoring to classify the cases which arise." Cooley's Constitutional Limitations (7th Ed.) 856.

For present purposes we deem it sufficient to say that in our opinion the distribution of advertising matter is not so directly connected with interstate commerce as to form a part thereof, and that a proper regulation of that business is within the police power of the states. Thus in International Text-Book Co. v. District of Columbia, 35 App. D. C. 307, the court said:

"The statute here under consideration is general, and imposes the same burden upon the citizens of the District of Columbia as upon strangers. It does not purport to deny to the complainant the right to do business in this District, nor does it require the payment of a license fee as a condition precedent to the carrying on of such business. It simply requires those who would engage in the business of bill posting to pay an annual fee of $20 for the privilege. It will hardly be contended that because of the mere fact that a foreign corporation is engaged in interstate commerce, it is not bound by such reasonable police regulations as the municipality may enact to promote the health, peace, or morals of the community. To illustrate: Would it be contended that because the plaintiff is engaged in interstate commerce, it could with impunity violate a municipal regulation prohibiting a noisy street parade at midnight? Is not the real question with which we are confronted whether the statute in question is a reasonable exercise of the police power?"

Nor can the appellant claim exemption on the ground that it was under contract with wholesalers to distribute the samples and pamphlets. In Browning v. Waycross, 233 U. S. 16, 34 S. Ct. 578, 58 L. Ed. 828, it was contended that the business of erecting lightning rods, shipped from another state, was a subject of interstate commerce and without the regulating power of the state, but, in answer to the contention, the court said:

"We are of the opinion that the court below was right in holding that the business of erecting lightning rods under the circumstances disclosed, was within the regulating power of the state and not the subject of interstate commerce for the following reasons: (a) Because the affixing of lightning rods to houses

was the carrying on of a business of a strictly local character, peculiarly within the exclusive control of state authority. (b) Because, besides, such business was wholly separate from interstate commerce, involved no question of the delivery of property shipped in interstate commerce or of the right to complete an interstate commerce transaction, but concerned merely the doing of a local act after interstate commerce had completely terminated. It is true, that it was shown that the contract under which the rods were shipped bound the seller, at his own expense, to attach the rods to the houses of the persons who ordered rods, but it was not within the power of the parties by the form of their contract to convert what was exclusively a local business, subject to state control, into an interstate commerce business protected by the commerce clause. It is manifest that if the right here asserted were recognized or the power to accomplish by contract what is here claimed, were to be upheld, all lines of demarcation between national and state authority would become obliterated, since it would necessarily follow that every kind or form of material shipped from one state to the other and intended to be used after delivery in the construction of buildings or in the making of improvements in any form would or could be made interstate commerce."

In the present case, the appellant asserts the right to employ a number of agents to distribute the samples and pamphlets in question for a period of about two months in each year, and the imposition of a license fee of $10 per month for the privilege thus claimed is within the police power of the state.

The decree is affirmed.