[1] The original complaint was filed against Sheldon Whitehouse and William Ankner, as the then, current Attorney General for the State of Rhode Island and the head of the State of Rhode Island Department of Transportation, respectively.
 DECISION
Before the Court are Super. R. Civ. P. 56 cross motions for summary judgment filed by Murray Marketing, Inc. (Plaintiff) and Defendants Patrick C. Lynch, in his official capacity as Attorney General for the State of Rhode Island (AG), and Michael P. Lewis, in his capacity as head of the Rhode Island Department of Transportation (DOT) (collectively, Defendants) on Plaintiff's claim for declaratory judgment pursuant to the Uniform Declaratory Judgments Act (UDJA). G.L. 1956 § 9-30-1 et seq. Plaintiff has moved for summary judgment challenging the constitutionality of G.L. 1956 § 24-10.1-1 et seq. and certain rules and regulations promulgated by the Rhode Island Department of Transportation (DOT).
 I Facts and Travel
In 1965, Congress enacted 23 U.S.C. § 131, the Federal Highway Beautification Act (FHBA), also known as the "Lady Bird Johnson Act." The purpose of the legislation was to *Page 2 
control the production of outdoor advertising structures in the vicinity of interstate highways "in order to protect the public investment in such highways, to promote the safety and recreational value of public travel, and to preserve natural beauty." 23 U.S.C. § 131(a). The FHBA requires states to effectively control the erection and maintenance of outdoor advertising signs, displays, and devices within 660 feet of interstate and primary highways and beyond 660 feet in non-urban areas if the signs are designed to be and are visible from such highways.Id. § 131(b), (c). States that fail to make such provisions, lose ten percent of their apportioned federal highway funds.Id. § 131(b).
In 1966, in order to comply with the mandates of the FHBA, Rhode Island enacted the Outdoor Advertising Act (RIOAA). The RIOAA, which was amended in 1990, prohibits the erection of any "outdoor advertising" in the State of Rhode Island.[2] Section 24-10.1-3. However, the Act also describes five categories of outdoor advertising which are exceptions to the all-encompassing prohibition. Id. § 24-10.1-3(1)-(4). Additionally, the RIOAA expressly authorizes DOT to promulgate regulations governing the issuance of permits for the erection and maintenance of outdoor advertising coming within the exceptions contained in subsections (1), (4) and (5) of § 24-10.1-3. Together, the RIOAA and the Outdoor Advertising Rules and Regulations (OARR), promulgated by DOT, are the current guidelines for the erection and maintenance of outdoor advertising in Rhode Island.
The preceding statutory history provides background for the instant dispute. Plaintiff, a Massachusetts corporation duly registered to do business in the State of Rhode Island, engages in the business of constructing billboards and leasing the billboard space to third parties. In 1989, Plaintiff applied to DOT for a permit to locate a billboard on the Amtrak property located at *Page 3 
Harris Avenue in the City of Providence. DOT denied Plaintiff a permit for this location on three separate occasions. Additionally, DOT denied Plaintiff's relocation application, requesting to move a billboard located at 3-5 Cobb Street in the City of East Providence to 1175 Warren Avenue, East Providence. Plaintiff also leased property at 81 Aldrich Street, Providence and 800 Wellington Avenue, Cranston for the purpose of erecting billboards, but never applied to DOT for permits for such locations.
Plaintiff filed the instant action alleging, inter alia, that DOT wrongfully denied Plaintiff's permit applications while allowing other applicants to erect new billboard advertising. Plaintiff specifically objects to outdoor advertising owned by Lamar Advertising (Lamar). Lamar, like Plaintiff, is an outdoor advertising company that does business in the State of Rhode Island. Lamar owns billboard structures and manages bus shelter advertising throughout Rhode Island. Plaintiff alleges that DOT wrongfully allowed Lamar to erect billboards at various locations in Rhode Island.
 II Standard of Review Declaratory Judgment
A declaratory judgment "is neither an action at law nor a suit in equity but a novel statutory proceeding. . . ." Northern TrustCo. v. Zoning Bd. of Review of Town of Westerly,899 A.2d 517, 520, n. 6 (R.I. 2006) (quoting Newport AmusementCo. v. Maher, 92 R.I. 51, 53, 166 A.2d 216, 217 (1960)). The purpose of the UDJA is "to allow the trial justice to `facilitate the termination of controversies.'" BradfordAssocs. v. R.I. Div. of Purchases,772 A.2d 485, 489 (R.I. 2001) (citations omitted). Thus, the UDJA grants broad jurisdiction to the Superior Court to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." Section 9-30-1. Therefore, it is the function of the Court "to undertake fact-finding *Page 4 
and then decide whether declaratory relief is appropriate."Town of Barrington v. Williams, 972 A.2d 603, 608 (R.I. 2009) (citing Providence Lodge No. 3, Fraternal Order of Police v.Providence External Review Authority,951 A.2d 497, 502 (R.I. 2008)).
 Summary Judgment
Summary judgment is proper when, after reviewing the admissible evidence in the light most favorable to the non-moving party, "no genuine issue of material fact is evident from the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, and the motion justice finds that the moving party is entitled to prevail as a matter of law."Smiler v. Napolitano, 911 A.2d 1035, 1038 (R.I. 2006) (quoting Rule 56(c)). When considering a motion for summary judgment, "the court may not pass on the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion."Lennon v. MacGregor, 423 A.2d 820, 822 (R.I. 1980). During a summary judgment proceeding, "the justice's only function is to determine whether there are any issues involving material facts."Id. (quoting Steinberg v. State,427 A.2d 338, 340 (R.I. 1981)). "Therefore, summary judgment should enter `against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case * * *.'" Lavoie v. North East Knitting, Inc.,918 A.2d 225, 228 (R.I. 2007) (quotingCelotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (construing the substantially similar federal rule)).
 III Discussion
The instant action challenges the constitutionality of the RIOAA and the OARR, which control and limit the types of outdoor advertising allowed in the State of Rhode Island. Plaintiff alleges that both the RIOAA and the OARR, violate the First andFourteenth Amendments to the *Page 5 
United States Constitution and Article 1, section 21 of the Rhode Island Constitution. Plaintiff also challenges the constitutionality of the RIOAA under the Commerce Clause of the United States Constitution. Defendants not only dispute Plaintiff's constitutional challenges but also argue, inter alia, that Plaintiff lacks standing to bring the instant action.
Plaintiff challenges the constitutionality of § 24-10.1-3 of the RIOAA, and §§ VI(C)(i)A, VI(C)(6), and VI(E)[3] of the OARR. The RIOAA prohibits all outdoor advertising in the State of Rhode Island but allows the following categories of exceptions:
 1) Directional and other official signs and notices erected, maintained, or authorized by a public agency or body, which signs and notices shall include, but not be limited to, signs and notices pertaining to natural wonders and scenic and historic attractions, as authorized or required by law.
 (2) Signs, displays, and devices advertising the sale or lease of property upon which they are located, subject, however, to the national standards as promulgated pursuant to the federal Highway Beautification Act of 1965.
 (3) Signs, displays, and devices advertising activities conducted on the property upon which they are located, subject, however, to the national standards as promulgated pursuant to the federal Highway Beautification Act of 1965 including spacing requirements of the Rhode Island department of transportation rules and regulations governing outdoor advertising, except for signs that are allowed to be relocated as permitted in subsection (5).
 (4) Bus shelters erected under the authority of the state department of transportation or Rhode Island public transit authority which shall be permitted no more than one two (2) sided sign. Each sign face shall be no more than twenty-four (24) square feet in size.
 (5) Lawfully permitted signs, displays, and devices already in existence may be relocated to other permitted locations with the approval of the appropriate governmental agency(s), provided that the relocated outdoor advertising remains the same or smaller in size, and that such outdoor advertising conforms and is consistent *Page 6 
with the municipal comprehensive plan and related zoning requirements.
 (6) This chapter shall not preclude the maintenance of existing outdoor advertising. Section 24-10.1-3(1)-(5).
Section VI of the OARR details the criteria necessary for a sign to be designated as legally conforming. Additionally, § VI(C)[4] provides the guidelines for the spacing of legally conforming signs adjacent to interstate highways and freeways on the primary system or secondary systems. In § VI(E) DOT outlines the conversion of legally conforming signs to Trivision or equivalent technology.
The UDJA vests the Superior Court with the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Section 9-30-1. However, the Court does face certain jurisdictional constraints when considering a claim for declaratory relief. A declaratory-judgment action may not be used for the determination of abstract questions or the rendering of advisory opinions, nor does it license litigants to fish in judicial ponds for legal advice. Sullivan v. Chafee,703 A.2d 748, 751 (R.I. 1997) (internal citation and quotations omitted). Therefore, a threshold issue before the Court is whether this action presents an actual case or controversy, invoking the proper jurisdiction of the Court. N M Properties, *Page 7 LLC v. Town of West Warwick, 964 A.2d 1141, 1144 (R.I. 2009) (citing Bowen v. Mollis, 945 A.2d 314, 317 (R.I. 2008)).
 A Standing
The Court will first address whether Plaintiff has proper standing to invoke jurisdiction of this Court. In order for a case to be justiciable, the plaintiff must have standing to pursue the action and some legal hypothesis which creates an entitlement to real and articulable relief. Id. at 1145 (citing Bowen,945 A.2d at 317 (quoting McKenna v. Williams,874 A.2d 217, 226 (R.I. 2005)). The Rhode Island Supreme Court has adopted the principles for the standing requirement employed by the United States Supreme Court. N M Properties, LLC,964 A.2d at 1145 (citing Rhode Island Ophthalmological Society v.Cannon, 113 R.I. 16, 26, 317 A.2d 124, 129 (1974)). The United States Supreme Court has identified three constitutional requirements for standing, all of which must be satisfied: (1) an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision.See, e.g. Lujan v. Defenders of Wildlife,504 U.S. 555, 559-60 (1992); Bennett v. Spear,520 U.S. 154 (1997). When considering standing, the Court "focuses on the party who is advancing the claim rather than on the issue the party seeks to have adjudicated." Bowen,945 A.2d at 317 (citations omitted).
In addition to the preceding requirements for standing, the United State Supreme Court has also recognized certain "prudential considerations that limit the challenges courts are willing to hear." Sec'y of State of Md. v. Joseph H. Munson Co.,467 U.S. 947, 955-56 (1984). Generally, a plaintiff must assert claims arising under his or her own legal rights and interests, a court should refrain from adjudicating abstract questions and generalized grievances, and a *Page 8 
complaint must fall within the zone of interests protected by the law invoked. Allen v. Wright,468 U.S. 737, 751 (1984) (citing Valley Forge ChristianCollege v. Americans United for Separation of Church and State,Inc., 454 U.S. 464, 477-75 (1982). Such limitations free courts "not only from unnecessary pronouncement[s] on constitutional issues, but also from premature interpretations of statutes in areas where their constitutional application might be cloudy."Joseph H. Munson Co., 467 U.S. at 956 (quoting UnitedStates v. Raines, 362 U.S. 17, 22 (1960)).
In order to have standing, Plaintiff must have "alleged some injury in fact, resulting from the challenged statute."N M Properties, LLC, 964 A.2d at 1145 (quoting RhodeIsland Ophthalmological Society,113 R.I. at 26, 317 A.2d at 129). Plaintiff's allegations concerning an intent to construct billboards at 81 Aldrich Street, Providence and 800 Wellington Avenue, Cranston, do not constitute an injury in fact. The Rhode Island Supreme Court has "defined injury in fact as `an invasion of a legally protected interest which is (a) concrete and particularized * * * and (b) actual or imminent, not `conjectural' or `hypothetical.'"Id. at 1145 (citations omitted). The undisputed evidence before the Court reveals that Plaintiff never applied to DOT requesting permits for such locations. (Defs. Ex.1, Depo. pp 43:14-16, 51:13-15.) Nevertheless, Plaintiff has alleged a proper injury in fact. DOT did deny Plaintiff permits for billboards at both Harris Avenue in Providence and Cobb Avenue in East Providence. (Defs. Exs. 2a, 3a, 3b.) However, Plaintiff also must demonstrate a causal connection between the injury and the challenged statutory and regulatory provisions. Id.; seealso Vono v. Lewis, 594 F.Supp.2d 189, 199 (D.R.I. 2009).
In Count VI, Plaintiff alleges that § VI(E) of the OARR, which allows the conversion of legally conforming signs to Trivision or equivalent technology, is unconstitutional and in *Page 9 
derogation of the Equal Protection Clause of the 14th Amendment. Article 1, Section 2 of the Rhode Island Constitution, and the Commerce Clause. However, the undisputed evidence before the Court reveals no such causal connection between the challenged provision and Plaintiff's injury. DOT denied Plaintiff's applications in the years 1989, 1990, 2000, and 2002. However, the challenged provision of the OARR, namely § VI(E), was an amendment and did not become effective until February 22, 2007. Given that § VI(E) was not cited by DOT as forming a basis for the denial of Plaintiff's requested permits and that such provision was not even enacted at the time of the denials, no causal connection can exist between § VI(E) and Plaintiff's injury. Therefore, the Court grants summary judgment to Defendants on Count VI of the Amended Complaint.
Plaintiff also fails to demonstrate a causal connection between the injury suffered and the statutory and regulatory provisions challenged in Count II of the Amended Complaint. The evidence before the Court shows that DOT denied Plaintiff's permit applications based on specific statutory and regulatory provisions. Plaintiff submitted two applications requesting to move a billboard located at 3-5 Cobb Street in the City of East Providence. DOT denied both applications, first on January 25, 2000, citing nonconformance with the U.S Department of Transportation Federal Highway Administration regulation 23 CFR 750.707, and second on March 20, 2002 citing noncompliance with § 24-10.1-3(5). (Defs. Exs. 3a, 3b.) Additionally, DOT continually denied Plaintiff's applications for permits to erect a billboard on Harris Avenue in Providence finding that the subject location was within 250 feet of an official guide sign and within 500 feet of an on ramp, which are violations of the OARR.[5] (Defs. Exs. 2a-2d.) *Page 10 
Accordingly, in the instant matter, the only injuries that Plaintiff has suffered is under § 24-10.1-3(5) of the RIOAA and §§ VI(C)(i)A and VI(C)(6), as amended.
In Count II Plaintiff alleges that § 24-10.1-3 et seq. is unconstitutional because it grants a quasi-public state agency, the Rhode Island Public Transit Authority (RIPTA), the authority to sanction what advertisements will populate Rhode Island's highways.See Pl. Compl. ¶ 17. The RIOAA, under § 24-10.1-3(4) allows DOT and RIPTA to erect bus shelters, "which shall be permitted no more than one two (2) sided sign" with a face not more than twenty-four (24) square feet in size. However, as discussed supra, Plaintiff has not suffered an injury under such section of the RIOAA, but rather only under § 24-10.1-3(5). Therefore, since Plaintiff has failed to show a causal connection between its injury in fact and the challenged statute, Count II also fails for lack of standing.
 B The First Amendment
The Court now turns to the merits of Plaintiff's claims. Counts I and V, concern Plaintiff's challenges to the RIOAA and the OARR onFirst Amendment grounds. In the instant matter, Plaintiff's Amended Complaint sets forth four legal claims with respect to theFirst Amendment: (1) the RIOAA is unconstitutional on its face; (2) the RIOAA and the OARR constitute an overly broad restraint on freedom of expression; (3) the RIOAA creates an impermissible content-based restriction on speech because of its distinction between on-premise and off-premise signs; and (4) the RIOAA granted unbridled discretion to public officials to determine what type of speech will be permitted on outdoor advertising and what speech will be banned. Plaintiff also alleges that DOT has "infringed Plaintiff's right to commercial speech by refusing to grant it a permit for advertising at Harris Avenue in Providence or Cobb St. in East Providence." (Pl. Mem. p. 12.) Defendants argue that noFirst Amendment application exists *Page 11 
because Plaintiff does not engage in on-premise advertising and DOT has never denied Plaintiff a permit on the basis that the location only allows on-premise advertising.
The Court again will address whether Plaintiff has standing to pursue its various First Amendment claims. The overbreadth doctrine "arises when a statutory enactment is so broad in its sweep that it is capable of reaching constitutionally protected conduct."State v. Russell, 890 A.2d 453, 459 (2006) (citingCranston Teachers Alliance Local No. 1704 AFT v. Miele,495 A.2d 233, 235 (R.I. 1985). The overbreadth doctrine asserted inFirst Amendment cases involving non-commercial speech permits third-party standing when a statute is constitutionally applied to the litigant but might be unconstitutionally applied to third parties not before the court. Granite State Outdoor Advertising,Inc. v. City of Clearwater,351 F.3d 1112, 1116 (11th Cir. 2003) (citingVillage of Schaumburg v. Citizens for a Better Env't,444 U.S. 620, 634 (1980). Although the overbreadth doctrine is an exception to the prudential standing prohibition against jus tertii claims, a plaintiff challenging statutory and regulatory provisions under the First Amendment must still satisfy the core requirements of standing, specifically an injury in fact, a causal connection between the injury and the challenged conduct, and redressability.CAMP Legal Defense Fund, Inc. v. City of Atlanta,451 F.3d 1257, 1270 (2006) (citing Joseph H. Munson Co.,467 U.S. at 956-57); see also Granite State OutdoorAdvertising, Inc., 351 F.3d at 1117.
In Advantage Media, LLC v. City of Eden Prairie, an outdoor advertising company sued a city under § 1983, alleging that city's sign code violated company's speech, due process, and equal protection rights. 456 F.3d 793 (8th Cir. 2006). The 8th Circuit held that because the challenged code's provisions were properly considered severable, the plaintiff needed to show injury, causation, and redressability with respect to each provision it challenged as overbroad. *Page 12 Id. at 801. However, since most of the content based restrictions and procedural mechanisms that the plaintiff claimed violated the First Amendment rights of other parties were not factors in the denial of its own permit applications, it could not show causation with respect to them and therefore, the challenges failed for lack of constitutional standing. Id. (citingGospel Missions of America v. City of Los Angeles,328 F.3d 548, 554 (9th Cir. 2003)).
As discussed supra, Plaintiff has personally suffered an injury in fact, the denial of permit applications by DOT for both Harris Avenue and Cobb Avenue locations. However, such injury was only suffered under § 24-10.1-3(5) of the RIOAA and §§ VI(C)(i)A and VI(C)(6) of the OARR, as amended. Further, both the RIOAA and the OARR contain comprehensive severability provisions, providing that if any "section, clause, or provision" is declared unconstitutional or ineffective, that ruling will not have an effect on any other section, clause or provision. Section 24-10.1-12; § XVI(A). Accordingly, in the instant matter, Plaintiff only has standing to challenge the constitutionality of the provisions which were factors in the denial of its permits, §§ 24-10.1-3(5), VI(C)(i)A and VI(C)(6), as applied to it and, under the overbreadth doctrine. Advantage Media,LLC, 451 F.3d at 800-02; see also Granite State OutdoorAdvertising, Inc, 351 F.3d at 1117; Tanner AdvertisingGroup, L.L.C. v. Fayette County,451 F.3d 777, 791 (11th Cir. 2006) (In both cases, the 11th Circuit found that the plaintiff, an outdoor advertising company, lacked standing to challenge the constitutionality of municipal code provisions which had not been factors in the denial of its permit applications.) Sections 24-10.1-3(5), VI(C)(i)A and VI(C)(6) do not distinguish between on-premise and off-premise signs nor make any content-based restrictions. Therefore, Plaintiff's challenge with respect to the impermissible content-based restrictions on speech must fail for lack of standing. The Court will *Page 13 
now discuss Plaintiff's remaining arguments that the RIOAA is unconstitutional both under the overbreadth doctrine and on its face.
 Overbreadth Doctrine
The overbreadth doctrine arose from a judicial fear that invalid laws might chill protected speech if they are not quickly struck down. Cranston Teachers Alliance Local No. 1704 AFT,495 A.2d at 235 (citing Magill v. Lynch,560 F.2d 22, 29 (1st Cir. 1977), cert.denied, 434 U.S. 1063 (1978). A statute is overbroad if, in addition to proscribing activities which may constitutionally be forbidden, it also sweeps within it coverage speech or conduct which is protected by the guarantees of free speech. Id. Here, Plaintiff argues that the challenged provisions reach too far to accomplish the objective of highway beautification. Defendants counter that the challenged provisions directly advance the General Assembly's substantial goals of advancing traffic safety and aesthetics and, regulate no more speech than is necessary.
According to the United States Supreme Court, striking down a statute as overbroad is an extreme remedy that should only be used sparingly. U.S. v. Bader, 698 F.2d 553, 556 (1983) (citingBroadrick v. Oklahoma, 413 U.S. 601, 615 (1973);New England Accessories Trade Ass'n, Inc. v. City of Nashua,679 F.2d 1 (1st Cir. 1982). Accordingly, where conduct and not merely speech is involved, "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Broadrick,413 U.S. at 615. Sections 24-10.1-3(5), VI(C)(i)A and VI(C)(6) are content-neutral provisions which provide limited discretion to the permitting authority. According to § 24-10.1-3(5), lawfully permitted outdoor advertising already in existence may be relocated to other permitted locations provided that it "remains the same or smaller in size, and that such outdoor advertising conforms and is consistent with the municipal comprehensive plan and related zoning requirements." Further, the *Page 14 
challenged OARR provisions, which do not provide DOT with any discretion, designate the proper spacing criteria for a sign to be designated as legally conforming. The challenged provisions do not create sweeping prohibitions of outdoor advertising but rather, provide definitive standards as controlling guidelines for DOT in issuing outdoor advertising permits.
In addition, in Broadrick the Court noted that although it is important to prevent the chilling effect of an overbroad law, such an interest "cannot justify prohibiting all enforcement of that law-particularly a law that reflects `legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct.'" Virginia v. Hicks,539 U.S. 113, 119 (quoting Broadrick, 413 U.S. at 615). Here, the General Assembly has declared that the policy of the RIOAA is to promote and maintain the safety of Rhode Island's highways and "to preserve and enhance the natural scenic beauty or aesthetic features of the highways and adjacent areas." See § 24-10.1-1. It is well-settled that "traffic safety and the appearance of the city-are substantial governmental goals." Metromedia, Inc. v. City of SanDiego, 453 U.S. 490, 508-08 (1981) (citing Railway ExpressAgency, Inc. v. New York, 336 U.S. 106, 109-10 (1949); PennCentral Transportation Co. v. New York City, 438 U.S. 104 (1978);Village of Belle Terre v. Boraas, 416 U.S. 1 (1974);Berman v. Parker, 348 U.S. 26, 33 (1954)). For these reasons, the Court finds that §§ 24-10.1-3(5), VI(C)(i)A and VI(C)(6) are not unconstitutionally overbroad.
Moreover, the Court finds that the subject provisions were constitutionally applied to Plaintiff. The undisputed evidence before the Court reveals that with regards to the Cobb Street application, Plaintiff was requesting to convert a single-faced billboard into a double-faced, V-type, monopole billboard structure. See Pl. Ex. 3b; Defs. Ex. 1, Depo. 22:4-9. Since according to the OARR a V-type sign is considered to be two signs, Plaintiff's conversion would be *Page 15 
directly in conflict with § 24-10.1-3(5). Additionally, DOT continually denied Plaintiff's applications for permits to erect a billboard on Harris Avenue in Providence each time finding that the subject location was within 250 feet of an official guide sign, a direct violation of § VI(C)(6) of the OARR . See
Defs. Exs. 2a-2d. Therefore, the Court grants summary judgment to the Defendants on Counts I and V.
 C The Commerce Clause
In Count III of the Amended Complaint, Plaintiff asserts that the RIOAA, specifically § 24-10.1-3, violates the Commerce Clause of the United States Constitution because it restrains trade in interstate commerce. The Commerce Clause of the United States Constitution, Art. 1, § 8, cl. 3, reserves to Congress the power "[t]o regulate Commerce of foreign nations, and among the several states, and with the Indian Tribes." In areas where Congress has not acted affirmatively to protect interstate commerce, the so-called dormant Commerce Clause prevents the states from discriminating against such commerce. See The Real Estate Bar Assoc. For Mass.,Inc. v. National Real Estate Information Services,2010 WL 2473323, *10 (1st Cir. 2010); Okla. TaxComm'n v. Jefferson Lines, Inc., 514 U.S. 175, 179-80 (1995);Healy v. Beer Inst., 491 U.S. 324, 326 n. 1, (1989). However, the restraints imposed on states by the dormant Commerce Clause are not absolute, and "the States retain authority under their general police powers to regulate matters of legitimate local concern, even though interstate commerce may be affected." PharmaceuticalResearch and Mfrs. of America v. Concannon,249 F.3d 66, 79 (1st Cir. 2001) (quotingMaine v. Taylor, 477 U.S. 131, 138, (1986)). To prevail on this claim, Plaintiff must show that the RIOAA either has an "extraterritorial reach," requiring out-of-state commerce to be conducted according to in-state terms or discriminates against interstate *Page 16 
commerce and fails to advances a legitimate local purpose.Id. at 79-80 (internal citations omitted).
The Supreme Court has long sustained the regulation and prohibition of various forms of outdoor commercial advertising as an exercise of the police power of the states. Howard v. State Dept.of Highways of Colorado,478 F.2d 581, 584 (10th Cir. 1973); Fifth AvenueCoach Co. v. New York, 221 U.S. 467 (1911); PackerCorp. v. Utah, 285 U.S. 105 (1932); cf. Lorillard TobaccoCo. v. Reilly, 76 F.Supp.2d 124 (D.Mass. 1999) (The Court found that for preemption purposes, historic police power of the states includes restrictions on size and placement of outdoor advertisements.). Additionally, in Packer, the United States Supreme Court held that the Commerce Clause does not interpose any barriers to a state's effective control of advertising which is essentially local. Packer Corp., 285 U.S. at 112. InPacker, the Court found that the statute was nondiscriminatory since its aim was not directed at the importation of the advertisements, but rather their use when affixed to billboards permanently located in the state. Id. at 111 (citingBrowning v. City of Waycross, 233 U. S. 16, 22-3 (1911)).
Similarly, the prohibition on outdoor advertising in the RIOAA is nondiscriminatory, focusing exclusively on the control of billboard locations and advertising only within the State of Rhode Island.Id. at 112 (citing Jell-O Co. v. Landes,20 F.2d 120, 121 (9th Cir. 1927)). As discussedsupra, the General Assembly has declared that the policy of the RIOAA is to promote and maintain the safety of Rhode Island's highways and "to preserve and enhance the natural scenic beauty or aesthetic features of the highways and adjacent areas."See § 24-10.1.1. Further, in Vono, the United States District Court for the District of Rhode Island noted that the Rhode Island Outdoor Advertising Act had an "expressly neutral intent," and "the General Assembly adopted the RIOAA to control the effects of billboards and signs along the interstate *Page 17 
and primary highway system and presumably to ensure receipt of federal highway funds." Vono,594 F.Supp.2d at 200; § 24-10.1-1. Given that the RIOAA focuses exclusively on the control of outdoor advertising in the State of Rhode Island and is nondiscriminatory, Plaintiff's Commerce Clause claim cannot succeed. Therefore, the Court grants summary judgment on Count III to Defendants.[6]
 IV Conclusion
After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, the Court grants summary judgment to Defendants on Counts II and VI due to a lack of standing sufficient to invoke the jurisdiction of the Court. Additionally, the Court grants summary judgment to Defendants on Counts I and V, finding that §§ 24-10.1-3(5), VI(C)(i)A and VI(C)(6) are not unconstitutionally overbroad and were constitutionally applied to Plaintiff. Further, given that the RIOAA focuses exclusively on the control of outdoor advertising in the State of Rhode Island and is nondiscriminatory, the Court grants summary judgment to Defendants on Count III of the Amended Complaint. The Court also grants Defendants summary judgment on Count IV, seeking injunctive relief.
Prevailing counsel may present an order consistent herewith which shall be settled after due notice to counsel of record.
[2] Prior to the 1990 amendment the statute only prohibited the erection or maintenance of outdoor advertising "within six hundred and sixty (660) feet of the nearest edge of the right of way and visible from the main traveled way of the interstate or primary highways in" the State of Rhode Island. P.L. 1968 ch. 268 § 1.
[3] Plaintiff, in Count VI of its Amended Complaint refers to regulations in "Section C (I) E" providing for "the exchange of two valid billboard permits for Trivision Technology permits." The Court assumes that Plaintiff meant OARR § VI (E) which concerns the conversion of legally conforming signs to Trivision or equivalent technology.
[4] Section VI(C)(i)(A) of the OARR provides that:
 Zoned industrial or commercial area [does not apply to secondary systems] — spacing between signs along each side of the highway shall be a minimum of 750 feet from the sign structure to sign structure. Back-to-back and V-type signs may be erected at single locations. No structure may be located adjacent to or within 500 feet of an Interchange, exit or entrance ramp, intersection at grade, or a safety rest area. Said 500 feet to be measured along the edge of pavement along the Interchange, ramp, intersection at grade, or a safety rest area or state-way from the beginning or ending of the pavement widening at the entrance to and exist from the state-way. Said distance limitation shall be measured separately for each direction of travel.
Section VI(C)(6) of the OARR provides that "[n]o signs may be located on the same side of the state-way within 250 feet of a major official guide sign."
[5] On January 18, 1990, Plaintiff's permit application was denied citing the previous findings. Previous applications for this location also were denied by DOT which found that the application did not contain a complete sketch or the written authorization of the owner of real property of the subject lot in compliance with the OARR. All the denials found that the proposed location was within 250 feet of an official guide sign. (Defs. Exs. 2a-2d.)
[6] Since Count IV seeks injunctive relief based on the allegations in Counts I-III, Count IV must fail, and the Court accordingly grants summary judgment to Defendants.