**STATE ex rel. TOWN OF WESTERLY**

v.

**Charles M. BRADLEY.**

No. 2004–197–C.A.

Supreme Court of Rhode Island.

June 21, 2005.

Jennifer S. Sternick, Newport News, VA, for Plaintiff.

Charles Michael Bradley, Defendant pro se.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on March 7, 2005, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing arguments of counsel and reviewing the memoranda submitted by the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time.

### Facts and Travel

A breachway is "[a] connecting channel, usually between a coastal pond and the ocean, which permits water exchange between the two." R.I. Code R. 04 000 010 (2005). The Weekapaug Breachway (breachway) in the town of Westerly (town or Westerly) is the focal point of this appeal. Winnapaug Pond, a coastal lagoon or salt pond, also in Westerly, has, as its southerly border, a barrier beach that separates it from the Atlantic Ocean.[1] The breachway connects Winnapaug Pond (pond) with the Atlantic Ocean; it begins at a point slightly southeast of the pond where it cuts through the barrier beach to the sea. From that point, a channel extends north for approximately one-half mile, and then turns to the northwest for approximately another one-half mile to its confluence with the pond. The Weekapaug Bridge (bridge) crosses the channel just north of its northwesterly turn toward the pond. Much of the controversy in this case centers on where the breachway ends and whether the entire channel is part of the breachway.

The *pro se* defendant, Charles M. Bradley (Bradley or defendant), an attorney, was found guilty in the Municipal Court of the Town of Westerly of violating Westerly Ordinance § 4–45, which prohibits swimming in the town's breachways.[2] He appealed to the Superior Court and filed a motion to dismiss, asserting that § 4–45 violates his rights under both the state and federal constitutions. The trial justice denied defendant's motion, finding that defendant had adequate notice of the prohibitions of § 4–45 and that the ordinance neither is unconstitutionally vague, nor does it violate the public trust doctrine.

A trial *de novo* was held before a jury. Westerly Assistant Harbormaster, Eugene P. Trombino (Trombino), testified that, on August 4, 2002, he was on duty, monitoring boat and jet-ski traffic in the breachway. His motorcraft was in a fixed location at the Weekapaug Fire District docks, approximately one-quarter mile north of the bridge. According to Trombino, he "saw a head [in the water] coming down the breachway." That head later was determined to belong to defendant. Trombino explained that he informed the swimmer that swimming was prohibited in the breachway and ordered defendant out of the water. Bradley refused and, according to defendant, he continued "treading water as [he and Trombino] were conversing." Trombino called for backup in case "Mr. Bradley might need transportation to the station." At this point, defendant agreed to get out of the water "and climbed up on

---

1. The record indicates that Winnapaug Pond sometimes is referred to as Brightman's Pond or Weekapaug Pond.

2. At the time of this prosecution, Westerly Ordinance § 4–45 provided:

 **"Swimming in breachway prohibited.**

 "(a) No person shall swim in the breachway of the Winnapaug Pond * * * or any breachway within the jurisdiction of the town.

 "(b) Any person in violation of this section shall be subject to the fine identified in the violation schedule contained within this article."

[a] piling and sat there until the cruiser arrived." The defendant admitted that he did not immediately remove himself from the waterway; instead, defendant disputed whether he was in the breachway or in "the channel."

According to Trombino, the breachway commenced at the Atlantic Ocean and ended at a point well north of where defendant first was approached and informed that he was in a prohibited area. Trombino testified that, in determining that defendant was within the boundaries of the breachway, he relied on Westerly Ordinance § 4–38.[3] According to Trombino, signs were posted on the bridge, facing both north and south, that read "[n]o swimming in breachway." Trombino testified that the breachway is traversed by boats, jet-skis, and other watercraft, and that § 4–38 was implemented as a public safety measure. He explained that the tide rises and falls in the pond, and water rapidly flows through the narrow channel into or out of the pond. According to Trombino, the tide was incoming at a rate of "upwards of five miles an hour" when he observed defendant floating with the tide.

■ The defendant testified that, after becoming "hot and sunburned" at the beach, he walked across the bridge and followed a path to the edge of the water about 300 yards north of the bridge. The defendant said that he entered the water, intending to "allow the current to take me home to my house." The defendant admit-

ted that he was aware of the signs posted on the bridge prohibiting swimming in the breachway; nevertheless, he declined Trombino's invitation to get out of the water and continued floating past him. According to defendant, he, along with "the locals," considered the breachway to be only that portion of the channel south of the bridge. In testifying on his own behalf, defendant also testified that "if the [t]own is going to prohibit me from swimming in an area, then I have to know beyond a reasonable doubt where that area is."[4]

The issue before the jury was whether defendant was in the breachway when Trombino stopped him and told him to get out of the water. The jury returned a guilty verdict, and defendant timely appealed, reiterating the constitutional arguments made in support of his motion to dismiss.

### Vagueness

■ The defendant argues that § 4–45 is unconstitutionally vague on its face because it does not define the geographical area that constitutes the breachway. In a well-reasoned written decision denying defendant's motion to dismiss, the trial justice found that § 4–45 was not unconstitutionally vague because notice of the breachway's boundaries was provided in § 4–38, and defendant, admittedly, was swimming within those boundaries. We agree.

---

3. Section 4–38 provides:
 "**Speeds within Weekapaug Breachway.**
 "Operators of powered craft shall not operate their vessels, ships, boats, jet-skis, personal watercraft or the like at a speed greater than five (5) miles per hour or at no wake[,] whichever is slower[,] from the entrance to the Weekapaug Breachway at its intersection with the Weekapaug Bridge and continuing down the breachway past its intersection with Winnapaug Pond until

a line from the south western most point of Lot # 5 of Assessor's Plat # 142 in a line bisecting Winnapaug Pond due south until it meets Lot # 15 of Assessor's Plat # 156."

4. This is an inaccurate statement of the law. One who challenges the constitutionality of a statute or ordinance bears the burden of proving that it violates the constitution beyond a reasonable doubt. *Gem Plumbing & Heating Co. v. Rossi*, 867 A.2d 796, 808 (R.I.2005).

A criminal law may be void for vagueness if it "fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits * * * [or] authorize[s] and even encourage[s] arbitrary and discriminatory enforcement." *City of Chicago v. Morales,* 527 U.S. 41, 56, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (citing *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)). In a penal statute, the notice requirement is intended to provide an ordinary citizen with the information necessary "to conform his or her conduct to the law." *Id.* at 58, 119 S.Ct. 1849. These minimal requirements for enforcement of penal laws prevent " 'standardless sweep[s that] allow[ ] policemen, prosecutors, and juries to pursue their personal predilections.' " *Kolender,* 461 U.S. at 358, 103 S.Ct. 1855.

When considering a challenge to the constitutionality of a statute, our review begins with a presumption of constitutionality. *Gem Plumbing & Heating Co. v. Rossi,* 867 A.2d 796, 808 (R.I.2005). "This [C]ourt will attach 'every reasonable intendment in favor of * * * constitutionality' in order to preserve the statute." *Id.* (quoting *Lynch v. King,* 120 R.I. 868, 875, 391 A.2d 117, 121 (1978)). The challenger bears the burden of proving beyond a reasonable doubt that the challenged enactment is unconstitutional. *Id.* (citing *Rhode Island Insurers' Insolvency Fund v. Leviton Manufacturing Co.,* 716 A.2d 730, 734 (R.I.1998)). A vagueness challenge requires this Court to examine the enactment to determine whether it is "impermissibly vague in all of its applications," in violation of due process. *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Whiting v. Town of Westerly,* 942 F.2d 18, 22 (1st Cir.1991).

To protect the safety of its citizens, Westerly has chosen to prohibit swimming in the breachway and, at the time of this prosecution, the limits of the breachway were defined by the terms of § 4–38. As the trial justice reasoned, it is appropriate to refer to the limits of the breachway, as set forth in § 4–38, to give meaning to § 4–45. In *Winters v. New York,* 333 U.S. 507, 518, 68 S.Ct. 665, 92 L.Ed. 840 (1948), the United States Supreme Court decreed that courts can examine "[t]he entire text of the statute or the subjects dealt with" in determining whether enacted language is so vague " 'that men of common intelligence must necessarily guess at its meaning.' " *Id.* (quoting *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). The town's proffered intent in adopting §§ 4–38 and 4–45 was to protect the health and safety of its townspeople and visitors from dangers posed by boat and powered motorcraft traffic in the breachway. Both §§ 4–38 and 4–45 share a common subject matter—the safety of people using the breachway.

Also, defendant's contention that the end point of the breachway, as set forth in § 4–38, is ambiguous does not provide a safe harbor for his vagueness challenge to § 4–45. The defendant argues that § 4–38 was intended to define the no-wake zone in the breachway, not the breachway itself, and by its terms, the ordinance provides for an overlap between the north end of the breachway and the beginning of the pond. The ordinance declares that the no-wake zone extends "from the entrance to the Weekapaug Breachway at its intersection with the Weekapaug Bridge and continuing down the breachway *past* its intersection with Winnapaug Pond * * *." Section 4–38. (Emphasis added.) The defendant contends that the breachway and the pond must be distinct bodies of water,

and therefore, the no-wake area defined in § 4–38 extends beyond the unidentified endpoint of the breachway itself. However, it is undisputed that, when he encountered the assistant harbormaster, defendant was in the breachway, as described in § 4–38, and not close to the end of the channel.

 Trombino testified that when he first observed Bradley bobbing in the water with the incoming tide he was in the channel, approximately one-quarter mile north of the bridge—well south of its intersection with Winnapaug Pond. One "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Village of Hoffman Estates*, 455 U.S. at 495, 102 S.Ct. 1186. A vagueness challenge to an enactment that "do[es] not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *Id.* at 495 n. 7, 102 S.Ct. 1186 (quoting *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975)). Given that defendant's conduct clearly is within the prohibition set forth in the ordinance, Bradley cannot complain that the enactment may be unconstitutionally applied to others.[5] *Whiting*, 942 F.2d at 22.

 When confronted with a challenge to the constitutionality of a legislative enactment, a court must consider any limiting construction placed on the statute or ordinance by the enforcement agency, *Grayned v. City of Rockford*, 408 U.S. 104, 110, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972),

and if necessary, whether the statute may be construed to save its constitutionality. *Hometown Properties, Inc. v. Fleming*, 680 A.2d 56, 60 (R.I.1996) (citing *Advisory Opinion to the Governor (DEPCO)*, 593 A.2d 943, 946 (R.I.1991)). It is the function of the court to adopt an interpretation of an ordinance or statute "that allows us to avoid a finding of unconstitutionality." *Id.*

Having examined the 2004 enactment in light of defendant's vagueness concerns, we are satisfied that the 2004 ordinance, which prohibits swimming in the breachway and specifically defines the beginning and end points of the prohibited area, removes any doubt about its constitutionality. Accordingly, defendant's argument that the ordinance is unconstitutionally vague lacks buoyancy.

### Public Trust Doctrine

 The defendant contends that § 4–45 violates the public trust doctrine, as codified in article 1, section 17, of the Rhode Island Constitution. The public trust doctrine predates our state constitution and requires that the state hold all lands "below the high-water mark in a proprietary capacity for the benefit of the public." *Greater Providence Chamber of Commerce v. State*, 657 A.2d 1038, 1041 (R.I.1995). Under the public trust doctrine, the General Assembly is vested with the authority and responsibility for regulating and preserving tidal lands and may determine appropriate uses for tidal land,

---

5. In 2004, in connection with a comprehensive amendment to the town code of ordinances, the ordinance prohibiting swimming in the breachway was amended to include the specific areas where the prohibition applies. These areas are defined as:

"the southernmost extension of said such breachway into the sea and thence running north to its intersection with the Weeka-

paug Bridge; thereafter, running further north inland from said bridge to a point identified by the conclusion of the breachway wall to the west and the beginning of private homes to the east * * *." Code of the Town of Westerly, R.I. ch. 86, § 25. The ordinance prohibiting swimming in the breachway was amended on April 12, 2004.

grant tidal land to another, or "delegate the authority to regulate that land on the state's behalf." *Town of Warren v. Thornton–Whitehouse,* 740 A.2d 1255, 1259–60 (R.I.1999) (citing *Greater Providence Chamber of Commerce,* 657 A.2d at 1040). The state's plenary authority over tidal lands is nevertheless restricted by article 1, section 17, which preserves "all the rights of fishery, and the privileges of the shore" to the state's inhabitants,

> "to which they have been heretofore entitled under the charter and usages of this state, including but not limited to fishing from the shore, the gathering of seaweed, leaving the shore to swim in the sea and passage along the shore; and they shall be secure in their rights to the use and enjoyment of the natural resources of the state with due regard for the preservation of their values; * * *." *Id.*

■ Although these rights remain inviolate, none is implicated in this case. A prohibition against swimming in the Weekapaug Breachway does not infringe upon the right of fishery or the privilege of the shore; nor does it entail leaving the shore to swim in the sea or implicate the right of passage along the shore. The defendant was not engaged in any of these activities. According to his own testimony, defendant had been at the beach enjoying the privileges of the shore, when he became hot and sunburned. Apparently barefoot and wearing a swimsuit, defendant disregarded the signs prohibiting swimming in the breachway and entered the water, intending to drift home with the tide. Although defendant had been exercising the rights guaranteed by article 1, section 17, he had left the shoreline and was walking inland when he decided to enter the breachway to float home. Consequently, Bradley's contention that § 4–45 infringed upon the rights guaranteed by article 1, section 17, has ebbed.

■ The defendant also argues that the exclusive jurisdiction of the state Coastal Resources Management Council (CRMC) over the tidal lands of the state, *Champlin's Realty Associates, L.P. v. Tillson,* 823 A.2d 1162, 1169 (R.I.2003), "establishes that the Town of Westerly has absolutely no authority to regulate swimming in the pond, or in any body it calls the breachway." He is mistaken. There is no suggestion that defendant was prohibited from swimming in the sea or the pond. He was ordered to remove himself from a prohibited area, and he refused, violating a town ordinance that prohibited swimming in the breachway.

The CRMC is vested with exclusive jurisdiction of development, operations and dredging activities "occurring below the mean high-water mark." *Tillson,* 823 A.2d at 1169 (citing G.L.1956 § 46–23–6(2)(ii)(A)). "Any municipal attempt to regulate these activities is preempted." *Id.* This Court consistently has acknowledged CRMC's comprehensive and exclusive "responsibility for a wide array of activities taking place below the mean high-water mark, including aquaculture, dredging, and 'use of coastal resources which are held in trust by the state for all its citizens.'" *Id.* (quoting G.L. § 46–23–6(4)(iii); *Thornton–Whitehouse,* 740 A.2d at 1259–60. However, we also have recognized that article 13 of the Rhode Island Constitution, Home Rule for Cities and Towns, grants to those communities with home rule charters "the right of self-government in all local matters." *Westerly Residents for Thoughtful Development, Inc. v. Brancato,* 565 A.2d 1262, 1263–64 (R.I.1989).

■ Cities and towns with home rule charters, such as Westerly, are vested with the authority to legislate matters of public health and safety, including a prohibition

against swimming in dangerous areas or in areas reserved for boat passage, as long as those regulations are not inconsistent with the constitution or statutes of the state or infringe upon CRMC's regulatory prerogatives. *See De Buono v. NYSA–ILA Medical and Clinical Services Fund,* 520 U.S. 806, 814, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997) ("[T]he historic police powers * * * include the regulation of matters of health and safety."); *cf. Hourihan v. Town of Middletown,* 723 A.2d 790, 791 (R.I.1998) (mem.) (holding town had authority to restrict horseback riding on its beaches during summer months). Additionally, the General Assembly specifically has delegated to the cities and towns the authority to enact ordinances "for the well ordering, managing, and directing of the prudential affairs and police of their respective towns and cities * * *." G.L.1956 § 45–6–1(a).[6] The Town of Westerly has done so with respect to the issues before this Court; it has determined that swimming in its breachways is dangerous and has enacted an ordinance prohibiting this activity. This ordinance is related directly to preserving the public peace, safety, comfort and welfare and is authorized by the town charter.[7] Accordingly, the defendant's contention that Westerly has no authority to prohibit swimming in the breachway is waterlogged.

## Conclusion

For the reasons set forth herein, the judgment is affirmed, and the papers in the case are remanded to the Superior Court.

---

6. General Laws 1956 § 45–6–1(a) provides, in pertinent part:

"Town and city councils may, from time to time, make and ordain * * * ordinances, regulations and bylaws for the well ordering, managing, and directing of the prudential affairs and police of their respective towns and cities, not repugnant to the constitution and laws of this state, or of the United States."

7. We recognize that the General Assembly also has enacted a statute prohibiting swimming in the Weekapaug Breachway. General Laws 1956 § 23–22.5–9 provides:

"**Swimming in breachways prohibited.**— No person shall swim in the breachway of the Charlestown Pond, or in the breachway of Quonochontaug Pond, or in the breachway of Weekapaug Pond. Any person violating any of the provisions of this section shall, upon conviction, be fined not more than fifty dollars ($50.00) for each offense."