STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| Title of Case | K&W Automotive, LLC, et al. v. Town of Barrington. |
|---|---|
| Case Number | No. 2018-250-Appeal.<br>(PC 18-471) |
| Date Opinion Filed | January 31, 2020 |
| Justices | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| Written By | Associate Justice William P. Robinson III |
| Source of Appeal | Providence County Superior Court |
| Judicial Officer From Lower Court | Associate Justice Maureen B. Keough |
| Attorney(s) on Appeal | For Plaintiffs:<br><br>Joelle C. Rocha, Esq.<br>Anthony DeSisto, Esq.<br>Michael D. Resnick, Esq. |
| | For Defendant:<br><br>Andrew M. Teitz, Esq.<br>Michael A. Ursillo, Esq. |

January 31, 2020

**Supreme Court**

No. 2018-250-Appeal.
(PC 18-471)

K&W Automotive, LLC, et al.     :

v.     :

Town of Barrington.     :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

K&W Automotive, LLC, et al.       :

v.               :

Town of Barrington.         :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**  The defendant, the Town of Barrington (the Town), appeals from the Providence County Superior Court's entry of final judgment on August 16, 2018, pursuant to a bench decision granting the request for declaratory and injunctive relief on the part of the plaintiffs—namely, K&W Automotive, LLC and its owners, Wendy and Kenneth Wajda, and ECIG Shed, Inc. and its owner, Louis DelSesto (collectively plaintiffs).  On appeal, the Town asserts that the hearing justice erred in ruling that it lacked authority under its Home Rule Charter to enact an ordinance banning the sale of flavored tobacco products and prohibiting the providing of any tobacco products to persons under the age of twenty-one.  Additionally, the Town argues that the hearing justice erred in failing to address whether the ordinance at issue is preempted by state law.  This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided.  After examining the written and oral submissions of the parties and after a thorough review of the record, we are of the opinion that cause has not been shown and that the appeal may be resolved without further briefing or argument.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

- 1 -

# I

## Facts and Travel

The facts relative to this matter are not in dispute and are set forth herein as provided in the parties' agreed-to stipulation of facts. On June 5, 2017, the Barrington Town Council (town council) enacted Ordinance No. 2017-7 making it "unlawful to sell or to possess with the intention of selling tobacco products within the town without a tobacco dealer's license," with such license being required "in addition to any other license required by state and/or federal law" (Licensing Ordinance). The Licensing Ordinance also imposed various conditions upon license holders, including a prohibition on "sell[ing] any tobacco product to any individual under the age of twenty-one (21) years" as well as a prohibition on "sell[ing] any flavored tobacco product to a consumer."

On November 6, 2017, in reaction to litigation, the town council repealed the Licensing Ordinance and enacted a new ordinance, Ordinance No. 2017-17 (Tobacco Ordinance). The Tobacco Ordinance omitted the licensing requirement, but it retained two primary components of the Licensing Ordinance: (1) a prohibition on the sale of flavored tobacco products by any person other than an "electronic smoking device establishment" as defined in the ordinance[1]; and (2) a prohibition against providing tobacco products in any way to any person under the age of twenty-one. The Tobacco Ordinance also stated that "[a] person who violates any provision of this chapter shall be subject to a fine of $100 for each separate offense." It further stated that a person who

---

[1]     Section 170-1 of the Tobacco Ordinance defines "electronic smoking device establishment" as follows:

> "Any business which does not sell food or beverages and for which the principal or core business is selling electronic smoking devices, as evidenced by any of the following: 33% or more of floor or display area is devoted to electronic smoking devices; or 67% or more of gross sales receipts are derived from electronic smoking devices." Town of Barrington Code of Ordinances § 170-1 (2018).

violates the minimum age provision would be subject to a $350 fine for the second offense and a $500 fine "for the third or any subsequent offense occurring within one year of the first offense."

On January 25, 2018, plaintiffs, two businesses located in the Town and licensed by the State of Rhode Island to sell tobacco and electronic nicotine delivery systems (electronic cigarettes) and their respective owners, filed a complaint in Superior Court seeking declaratory and injunctive relief so as to prevent the Town from enforcing the Tobacco Ordinance. The plaintiffs' complaint also referenced as interested parties seven other businesses located in the Town that are licensed to sell tobacco and/or electronic cigarettes.[2]

On July 19, 2018, after considering the oral and written submissions of the parties, the hearing justice issued a bench decision, in which she concluded that the Tobacco Ordinance was null and void; accordingly, she granted plaintiffs' request for declaratory and injunctive relief.[3] The hearing justice first determined that the Tobacco Ordinance primarily concerned public health and safety and that, therefore, "the [state's] police power [was not] implicated." Having cleared that hurdle, the hearing justice moved on to apply the three-variable test set forth in *Town of East Greenwich v. O'Neil*, 617 A.2d 104 (R.I. 1992). The hearing justice found that, pursuant to the *O'Neil* test, the Town did indeed lack authority under its Home Rule Charter to enact the Tobacco Ordinance because the subject matter involves a matter of statewide concern. Based on this ruling,

---

[2]    The complaint named the following entities as interested parties: Regency Cigar Emporium, LLC; Maxi Drug South, L.P.; Rhode Island Country Club, Inc.; Sowams, A.M., Inc.; Colbea Enterprises, LLC; Shaw's Supermarkets, Inc.; and Grapes and Grains, Inc.

[3]    We note that the following entities, acting as amici curiae, filed a brief in Superior Court: the American Cancer Society Cancer Action Network; the American Heart Association; the American Lung Association; the Campaign for Tobacco-Free Kids; the Tobacco Control Legal Consortium; the Rhode Island Thoracic Society; the Truth Initiative; and the City of Providence, Rhode Island. The amici curiae argued in support of upholding the Tobacco Ordinance, asserting that it would serve to protect the Town's residents, particularly its younger residents, from the health risks associated with tobacco use.

the hearing justice concluded that she did not need to determine if the Tobacco Ordinance is preempted by state law. Lastly, the hearing justice went on to address the issue of whether or not the Rhode Island General Assembly had delegated authority to the Town to legislate on this issue, and she found that the General Assembly had not provided the Town with such authority, either expressly or by necessary implication. An order and a final judgment entered in favor of plaintiffs on August 16, 2018, and the Town timely appealed.

## II

### Standard of Review

"[A] decision to grant or deny declaratory or injunctive relief is addressed to the sound discretion of the [hearing] justice and will not be disturbed on appeal unless the record demonstrates a clear abuse of discretion or the [hearing] justice committed an error of law." *La Gondola, Inc. v. City of Providence*, 210 A.3d 1205, 1213 (R.I. 2019) (quoting *Kayak Centre at Wickford Cove, LLC v. Town of Narragansett*, 116 A.3d 250, 253 (R.I. 2015)). When deciding a case based on stipulated facts, "[t]he trial court does not play a fact-finding role, but is limited to applying the law to the agreed-upon facts." *Morse v. Minardi*, 208 A.3d 1151, 1155 (R.I. 2019) (quoting *Hudson v. GEICO Insurance Agency, Inc.*, 161 A.3d 1150, 1153 (R.I. 2017)). Our review with respect to questions of law and statutory interpretation is *de novo*. *Delbonis Sand & Gravel Co. v. Town of Richmond*, 909 A.2d 922, 925 (R.I. 2006).

## III

### Analysis

On appeal, the Town asserts that the hearing justice erred in finding that the Town did not have authority under its Home Rule Charter to enact the Tobacco Ordinance because, in the Town's view, that ordinance addresses a matter of purely local concern. The Town further argues

that, because the Tobacco Ordinance addresses a matter of local concern, the hearing justice erred in failing to analyze whether the ordinance is preempted by state law. Such analysis, the Town argues, would have shown that the ordinance is consistent with state law and, thus, is not preempted. The Town also contends that, in conducting her analysis, the hearing justice did not give appropriate weight to *State ex rel. Town of Westerly v. Bradley*, 877 A.2d 601 (R.I. 2005).

The plaintiffs assert that the Tobacco Ordinance addresses a matter of statewide concern because it involves the regulation of business, over which they contend the state has exclusive power to legislate. The plaintiffs also assert that the Tobacco Ordinance involves a matter of statewide concern when analyzed under the three-part test set forth in *O'Neil*. Accordingly, plaintiffs argue that the hearing justice correctly found that no preemption analysis was necessary because the Town did not have authority to enact the ordinance in the first instance, either through its authority with respect to local concerns or through any enabling legislation enacted by the General Assembly. The plaintiffs also contend that, even if preemption is applicable, the minimum age provision is preempted because state law occupies the field. Lastly, plaintiffs aver that the Town's reliance on this Court's holding in *Bradley* is misplaced.

### A

### Authority Under the Town's Home Rule Charter

In analyzing the Town's contentions on appeal, we first address whether the Town, under its constitutionally authorized Home Rule Charter, had the authority to enact the Tobacco Ordinance. In 1951, the General Assembly enacted the Home Rule Amendment to the Rhode Island Constitution, granting to municipalities "the right to self government in all local matters." R.I. Const., art. 13, § 1. Specifically, article 13, section 2 of the Rhode Island Constitution provides:

> "Every city and town shall have the power at any time to adopt a charter, amend its charter, enact and amend local laws relating to its property, affairs and government not inconsistent with this Constitution and laws enacted by the general assembly in conformity with the powers reserved to the general assembly." R.I. Const., art. 13, § 2; *see Amico's Inc. v. Mattos*, 789 A.2d 899, 903 (R.I. 2002).

Pursuant to its authority under the Home Rule Amendment, the Town adopted the Barrington Town Charter (Home Rule Charter), which expressly vests the town council with the power "[t]o enact, amend or repeal ordinances for the preservation of the public peace, the health, safety, comfort and welfare of the inhabitants of the Town and for the protection of persons and property." Barrington Town Charter, § 2-1-6(a).

This Court has repeatedly held that the Home Rule Amendment allows municipalities to legislate on matters of purely local concern. *Amico's Inc.*, 789 A.2d at 903; *O'Neil*, 617 A.2d at 111; *Westerly Residents for Thoughtful Development, Inc. v. Brancato*, 565 A.2d 1262, 1264 (R.I. 1989) (holding that a town's decision to expand its sewer system was a matter of "purely local concern"). At the same time, however, we are mindful of the following pertinent principle: "Municipalities may not * * * legislate on matters of statewide concern. The power of the General Assembly remains exclusive in those areas." *O'Neil*, 617 A.2d at 111 (quoting *Brancato*, 565 A.2d at 1264). We have consistently recognized that "the Legislature continues to exclusively occupy the fields of education, elections, and taxation, thereby precluding any municipality's foray into these areas, absent specific legislative approval." *Amico's Inc.*, 789 A.2d at 903; *see Brancato*, 565 A.2d at 1264 (recognizing that the General Assembly maintains exclusive power over "the regulation of police affairs, the conduct of business, licensing, education, and elections") (quoting *Bruckshaw v. Paolino*, 557 A.2d 1221, 1223 (R.I. 1989)). In *O'Neil*, this Court, after recognizing the need for greater clarification with respect to matters that do not fall squarely within one of the

above-mentioned categories, identified three variables to be considered in discerning whether a matter is of local or statewide concern: (1) whether "uniform regulation throughout the state is necessary or desirable;" (2) "whether a particular matter is traditionally within the historical dominion of one entity;" and, most critically, (3) whether "the action of a municipality has a significant effect upon people outside the home rule town or city * * *." *O'Neil*, 617 A.2d at 111.

It now becomes our duty to apply to the Tobacco Ordinance the three-variable test set forth in *O'Neil*. As to the first variable, it is our view that uniform regulation of tobacco throughout the state is desirable, if not necessary. In *O'Neil*, the Town of East Greenwich passed an ordinance creating a moratorium on the construction of power lines exceeding a specified voltage. *Id.* at 106. This Court noted that three nearby municipalities had enacted similar ordinances, and the Court proceeded to express concern that patchwork legislation would "handicap compliance with safety regulations and inhibit the efficient distribution of electrical power." *Id.* at 111-12. Accordingly, the Court concluded that uniform regulation was necessary. *Id.* at 112. Similar to the situation which confronted the Court in *O'Neil*, at least four other Rhode Island municipalities have in recent years passed ordinances regulating the sale of flavored tobacco products. Moreover, the Rhode Island Department of Health, in response to an executive order issued by the Governor on September 25, 2019, promulgated an emergency regulation temporarily banning the sale of all flavored electronic cigarette products.[4] 216 RICR 50-15-6.9. Although patchwork legislation with

---

[4] On October 23, 2019, several businesses filed an action in Superior Court challenging the validity of the emergency regulation. On November 5, 2019, the Superior Court issued a decision denying the plaintiffs' request for a temporary restraining order, finding that the Department of Health had provided a sufficient basis for enacting the emergency regulation but also finding that the Department had failed to comply with the publication requirement of G.L. 1956 § 45-35-2.10. *Vapor Technology Association v. Raimondo*, PC-2019-10370, 2019 WL 5865900, at *1, *10 (R.I. Super. Ct. Nov. 5, 2019). Accordingly, the hearing justice gave the Department until November 8, 2019 to properly issue a public statement. *Id.* at *10. On November 6, 2019, the Department filed a Notice of Compliance and supporting affidavit indicating that it had published the Reason

respect to tobacco products does not raise the same level of immediate safety concerns as did the issue of power lines that was before the Court in *O'Neil*, there is nonetheless a legitimate concern that inconsistent regulations respecting tobacco will lead to confusion and decrease compliance with various federal and state regulations. Additionally, in our judgment, a comprehensive approach is desirable because it will increase the effectiveness of tobacco regulations by preventing persons otherwise prohibited from obtaining a certain tobacco product in one municipality from simply traveling to the nearest municipality that does permit such a purchase.

Turning to the second variable in the *O'Neil* analytical process, it is clear to this Court that tobacco regulation has traditionally fallen within the purview of the state. It was in 1892 that the General Assembly first enacted a statute prohibiting the providing of "any tobacco in the form of cigarettes" to minors under the age of sixteen. 1892 Acts and Resolves, ch. 1053, § 1. Moreover, since 1939, the state has required persons seeking to sell tobacco products in Rhode Island to obtain a license from the state tax administrator and to comply with various conditions or be exposed to the imposition of civil and/or criminal penalties. P.L. 1939, ch. 663, § 2; G.L. 1956 §§ 44-20-1 through 44-20-55. In addition to the licensing scheme, in 1996, the General Assembly enacted legislation with the express intent being "to preserve and protect the health of children by (1) stopping the illegal sale of tobacco to children, and (2) by severely punishing those who disregard the laws relating to the illegal sale of tobacco products to children." P.L. 1996, ch. 321, § 1 (entitled "An Act to Stop the Illegal Sale of Tobacco Products to Children"); G.L. 1956 § 11-9-13.3. Among other things, the act prohibited the sale of tobacco products to persons under the

---

for Finding Imminent Peril as well as the emergency regulation on the homepage of the Department's website. On November 25, 2019, the defendants, Governor Gina Raimondo, the Department of Health, and the Director of the Department of Health, Nicole Alexander-Scott, M.D., filed a motion to dismiss the plaintiffs' complaint, which is currently pending before the Superior Court.

age of eighteen, imposed various conditions upon the sale of tobacco products, and required the Department of Health to investigate possible violations of the act and to impose penalties accordingly. *See* §§ 11-9-13 and 11-9-14. More recently, the General Assembly has established a licensing scheme for the sale of electronic cigarettes, which is administered by the Department of Health. General Laws 1956 §§ 23-1-55 through 23-1-58.[5] While we are aware that some municipalities have in fact enacted ordinances relating to the regulation of tobacco, it nonetheless remains true that the state has historically been the entity largely responsible for the regulation of this matter.

With respect to the third *O'Neil* variable, the Town argues that the effect of this particular ordinance on persons outside the Town is relatively minor. As there are currently only nine businesses in the Town licensed to sell tobacco and electronic cigarettes, the effect of the Tobacco Ordinance is not significant and would appear to actually benefit those businesses outside the Town by increasing their business. Another apparent effect is that persons from outside the Town who may find themselves in the Town and wish to purchase tobacco products that are prohibited by Barrington's Tobacco Ordinance would have to travel to another municipality to do so. We are in agreement with the Town that these effects do not qualify as significant. However, the potential impact of municipalities across the state enacting their own various regulations would have some significance. When addressing the third variable, the Court in *O'Neil* relied upon a case from the Supreme Court of New Jersey in reasoning that, if each municipality were to impose its own notion

---

[5] In addition to regulating tobacco as a commodity, the General Assembly has further regulated tobacco by prohibiting smoking in public places, G.L. 1956 § 23-20.10-3, and in places of employment, § 23-20.10-4, as well as directing the local governing bodies of each school to develop procedures to enforce a prohibition on the use of tobacco products and electronic cigarettes by any person utilizing school facilities and to provide smoking cessation programs for school employees, G.L. 1956 §§ 23-20.9-5 and 23-20.9-7.

as to how to transmit electric current, "nothing but chaos would result, and neither the utility nor the state agency vested with control could be assured of [the] ability to fulfill its obligations of furnishing safe, adequate and proper service to the public in all areas." *O'Neil*, 617 A.2d at 112 (quoting *In re Public Service Electric and Gas Co.*, 173 A.2d 233, 241 (N.J. 1961)). As was mentioned with respect to the first variable, if each municipality were to impose its own tobacco regulations, the state's ability to efficiently enforce its own statutes and regulations relating to both tobacco and the conduct of business would be adversely affected. Because the effect of inconsistent regulations on the state's ability to foster public safety is significant, we conclude that third variable also supports the conclusion that the Tobacco Ordinance regulates a matter of statewide concern.[6]

Although the Tobacco Ordinance was enacted to protect public health and safety, our review of the three *O'Neil* variables leads us to conclude that the Tobacco Ordinance constitutes legislation concerning a matter of statewide concern and that it, therefore, infringes upon the power of the state. Accordingly, we are in agreement with the hearing justice's conclusion that the Town lacked authority under its Home Rule Charter to enact the Tobacco Ordinance.[7]

---

[6] The Town also contends on appeal that the hearing justice did not give proper weight to this Court's decision in *State ex rel. Town of Westerly v. Bradley*, 877 A.2d 601 (R.I. 2005), when deciding whether the Tobacco Ordinance involves a matter of statewide rather than purely local concern. We deem this argument to be without merit, and we shall address it no further.

[7] In its briefing and oral arguments before the Superior Court, the Town also argued that the General Assembly delegated authority to the Town to pass the Tobacco Ordinance through various statutes, including: G.L. 1956 § 45-6-1, chapter 20.10 of title 23, G.L. 1956 chapter 9 of title 11, and G.L. 1956 chapter 20.1 of title 44. The Town briefly makes reference to this argument in one sentence of its statement filed pursuant to Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure. However, this argument has not been adequately developed; and, therefore, we deem it waived on appeal. *See Broccoli v. Manning*, 208 A.3d 1146, 1149 (R.I. 2019) ("This Court generally deems an issue waived when a party simply states an issue for appellate review, without a meaningful discussion thereof.") (internal quotation marks omitted).

**B**

**Preemption**

We now turn to the Town's argument that the hearing justice erred in failing to conduct a preemption analysis. Relying upon this Court's decision in *Town of Warren v. Thornton-Whitehouse*, 740 A.2d 1255 (R.I. 1999), the hearing justice in this case found that she did not need to engage in a preemption analysis because she had already concluded that the Tobacco Ordinance involved a matter of statewide concern. In *Town of Warren*, we stated that "preemption only exists in circumstances in which the municipality would have the authority to regulate a particular subject in the absence of state action." *Town of Warren*, 740 A.2d at 1261. As we have similarly concluded in this case that the Town lacked the authority under its Home Rule Charter to enact the Tobacco Ordinance, it is our view that the hearing justice did not err in refraining from deciding whether the ordinance was preempted by state law.

**IV**

**Conclusion**

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record may be returned to that tribunal.